Turner, J.
 

 In these appeals, the county auditors of Cuyahoga and Lucas counties seek to have the court review rule No. 2 promulgated by the Tax Commissioner under authority of Section 1464-4, General Code, and related statutes. The question at once arises both as to the propriety and jurisdiction of this court in the premises. Counsel were invited to and have submitted briefs in respect of this court’s jurisdiction to entertain these appeals.
 

 It has been strongly urged here that appeal as of right in these cases is granted by Section 5611-2, General Code. We are of the opinion that this section authorizes appeals only in g«usi-judicial proceedings. Before the Board of Tax Appeals, counsel for appellants contended that they were not there engaged in an adversary proceeding.
 

 We are of the further opinion that rule-making by administrative officials is not a quasi-judicial function. Counsel for both appellants contended before the board that the rule in question invaded the legislative power. Counsel for appellant Zangerle renew that contention here.
 

 Section 2, Article IY of the Constitution, provides in part that this court shall have ‘£ such revisory jurisdiction of the proceedings of administrative officers as may be conferred by law.”
 

 It will be noted that the word ££proceedings” is used and not “acts,” “duties” or “steps taken.” Before taking up the definition of “proceedings,” it will be well to review the reason for the constitutional provision.
 

 It was held by the Supreme Court of the United States in the case of
 
 C., M. & St. P. Ry. Co.
 
 v.
 
 Minne
 
 
 *567
 

 sota,
 
 134 U. S., 418, 33 L. Ed., 970, 10 S. Ct., 462, as summarized in the headnotes of Lawyers’ Edition:
 

 “A law which, as construed by the Supreme Court of the state, allows a railroad commission to establish rates for railroads which are final, without issue made, or inquiry had, as to their reasonableness and forbids the courts to stay the hands of the commission if the rates established by it are unequal and unreasonable, conflicts with the Constitution of the United States.
 

 “So construed, it deprives the company of its right to a judicial investigation by due process of law, and substitutes therefor as an absolute finality the action of a railroad commission which is not clothed with judicial functions and does not possess the machinery of a court of justice.”
 

 In the ease of
 
 Hooking Valley Ry. Co.
 
 v.
 
 Public Utilities Commission,
 
 92 Ohio St., 9, 110 N. E., 521, Judge Johnson said, at page 14:
 

 “In order to give full validity to the proceedings and orders of the utilities commission, it was necessary that some adequate provision for their judicial review should be made; because if an administrative order results in the taking of property, such as the company claims results in this case, the defendant must not be denied the right to show that as matter of law the order was so arbitrary, unjust or unreasonable as to amount to a deprivation of property in violation of the Constitution. ’ ’
 

 Again, in the case of
 
 Hocking Valley Ry. Co.
 
 v.
 
 Public Utilities Commission,
 
 100 Ohio St., 321, 126 N. E., 397, Judge Johnson further said, at page 323:
 

 “It will be observed that both before and since the constitutional amendment the Legislature realized that in order to give validity to the proceedings and orders of the commission it was necessary that some adequate provision for their judicial review should be made, because if by legislative act or administrative order property or rights are taken or affected parties must
 
 *568
 
 be given full opportunity' to show by judicial review that the taking or interference with rights or property was so arbitrary, unjust or unreasonable as to amount to a deprivation in violation of the Constitution. This principle is nowhere denied. It is invoked and declared in
 
 C., M. & St. P. Ry. Co.
 
 v.
 
 Minnesota,
 
 134 U. S., 418, and
 
 Hocking Valley Ry. Co.
 
 v.
 
 The Public Utilities Commission et al.,
 
 92 Ohio St., 9, 14.” See, also,
 
 Stanton, Pros. Atty.,
 
 v.
 
 State Tax Commission,
 
 114 Ohio St. 658, 151 N. E., 760.
 

 Counsel have cited the case of
 
 Baymond
 
 v.
 
 Cleveland,
 
 42 Ohio St., 522, decided in 1885, as supporting their claim that the word “proceedings” as used in Article IV, Section 2 of the Ohio Constitution as amended in 1912 is not confined to proceedings of a judicial or quasi-judicial nature. We cannot agree with counsel that when the term “proceedings of administrative officers” was used in the 1912 constitutional amendment anyone was thinking of the 1885 interpretation of the word as applying to proceedings to levy an assessment for street improvements. Rather the draftsmen and proposers were thinking of the case of
 
 C., M. & St. P. Ry. Co.
 
 v.
 
 Minnesota, supra,
 
 which pointed out the requirements of due process.
 

 Coming now to a determination of what is meant by the term “proceedings,” there can be no doubt but that this term was used in its meaning applicable to gwosi-judicial proceedings.
 

 Section 11237, G-eneral Code, provides:
 

 “An action is an ordinary proceeding in a court of justice, involving process, pleadings, and ending in a judgment or decree, by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense.”
 

 Bouvier (Rawle’s Third Revision) defines “proceeding” as follows:
 

 “Proceeding.
 
 — In its general acceptation, the form in which actions are to be brought and defended, the
 
 *569
 
 manner of intervening in suits, of conducting them, the mode of deciding them, of opposing judgments and of executing. # *
 

 “Ordinary proceeding smtQnd.
 
 the regular and usual mode of carrying on a suit by due course at common law.
 

 “Summary proceedings
 
 are those where the matter in dispute is decided without the intervention of a jury; these must be authorized by the Legislature, except, perhaps, in cases of contempt, for such proceedings are unknown to the common law. ’ ’
 

 There may be, of course, legislative proceedings as well as judicial proceedings. But that these terms are technical in the several fields is illustrated by the holding of this court in
 
 State, ex rel. Johnson, City Solicitor,
 
 v.
 
 Chandler, Aud.,
 
 105 Ohio St., 499, 138 N. E., 67, wherein it was held:
 

 “The ordinances, resolutions, measures and proceedings mentioned in Section 23 of the Griswold Act (109 Ohio Laws, 336-348) refer to legislative acts, and the word ‘proceedings’ has no reference to administrative acts necessary to be performed in executing the legislative will.”
 

 While there are different kinds of proceedings, it is pointed out in. 34 Words & Phrases, Permanent Edition, 82, that the word “ ‘proceeding’ ordinarily relates to forms of law, to the modes in which judicial transactions are conducted.”
 

 In 1 American Jurisprudence, 405, Section 4, “proceeding” is defined as follows:
 

 “The term ‘proceeding’ is given different meanings according to the various connections • in which it is used. According tc the general acceptance of the term, it includes the form and manner, of conducting judicial business before a court or judicial officer, regular and ordinary proceedings in forms of law, and all possible steps in an action from its institution to the exécution of judgment, but more particularly, any
 
 *570
 
 application to a court of justice, however made, for aid in the enforcement of rights, for relief, for redress of injuries, for damages, or for any remedial object. A proceeding has also been defined as some act or acts done in furtherance of the enforcement of an existing right, real or imaginary, and may be by petition in a court of competent jurisdiction or by a summary remedy prescribed by statutes.
 
 * *
 
 *
 

 ‘ ‘ The title or designation which is given by the Legislature to a proceeding cannot change its substantial character or alter the rights of the parties to it.”
 

 In 1 Corpus Juris Secundum, 954, Section 1, it is said:
 

 “A
 
 proceeding, in a general sense, means the form and manner of conducting judicial business before a court or judicial officer; in a more particular sense, an application to a court of justice for any remedial object.
 

 “The term 'proceeding’ or 'proceedings’ has been said to be a technical term and to have acquired a peculiar and appropriate meaning in law. On the other hand, it has been said that it is not technical but generally speaking is a very comprehensive term and may have different meanings, according to the context and the subject to which it relates, such as by its combination with other words and phrases which vary its ordinary meaning.”
 

 It was further held by the Supreme Court of the United States in the case of
 
 C., M. & St. P. Ry. Co.
 
 v. Minnesota, supra, as digested in headnote 9 of Lawyers’ Edition:
 

 “Where no hearing is provided for, no summons or notice to the company, before the commission has found what it is to find and declared what it is to declare, and no opportunity provided for the company to introduce witnesses before the commission, there is not the semblance of due process of law.”
 

 It was to meet this criticism by the Supreme Court
 
 *571
 
 of the United States that the various states, including Ohio, in establishing regulatory commissions, provided that the investigations by state boards and commissions should be in the nature of legal proceedings, including notice, hearing and opportunity to introduce testimony through witnesses. Thus these boards and commissions came to be known as possessing
 
 quasi-
 
 judicial functions. To insure due process where property rights are involved, appeal to the courts was provided.
 

 The Board of Tax Appeals is a gmm-judicial body in discharging a part only of its functions (Sections 1464-1 and 1464-2, General Code). It has many purely' administrative powers and duties. Indeed, all of the powers, duties and functions of the Department of Taxation are divided between the Board of Tax Appeals and the Tax Commissioner (Section 1464-1
 
 et seq.,
 
 General Code).
 

 The making of rules for the valuation of property by the Department of Taxation is not a gwm-judicial function, and the fact that the Board of Tax Appeals-as a branch of the Department of Taxation may review any rule adopted and promulgated by the Tax Commissioner, the other branch of the Department of Taxation (Section 1464-4, General Code), does not result in a gti-asi-judicial proceeding.
 

 While rule-making is sometimes divided into two classes — first, rules prescribed by the board or officer as an announcement of opinion or policy, that is, a standard to guide the board or official in exercising discretion; and, secondly, rules limiting or circumscribing this discretion so as to prevent or make unnecessary the free and untrammeled exercise of discretion in every ease (see 4 Selected Essays on Constitutional Law, 357) — as to either class of these rules, a court may not take part in their enactment or promulgation. The function of a court is to decide whether such rules
 
 *572
 
 are reasonable as applied to the facts of a particular justiciable case.
 

 There can no longer be any doubt that some of the rules of these various administrative boards and commissions are legislation. As was- said by Dean Pound in his 1941 address before the American Bar Association:
 

 “Administrative rules and regulations having the force of law have become an increasingly important part of the everyday law in nation and state. Often these rules affect interests of far more economic significance to individuals than statutes or rules of court.” American Bar Association Journal, November 1941, Volume 27, page 671.
 

 In “The Task of Administrative Law,” Felix Frankfurter (now Mr. Justice Frankfurter) said: “The widening area of what in effect is lawmaking authority, exercised by officials whose action are not subject to ordinary court review, constitutes perhaps the most striking contemporary tendency of the Anglo-American legal order. * * * But the range of control conferred by Congress and the state Legislatures upon subsidiary law-making bodies, variously denominated as heads of departments, commissions and boards, penetrates in the United States, as in G-reat Britain and the Dominions, the whole gamut of human affairs. Hardly a measure passes Congress the effective execution of which is not conditioned upon rules and regulations emanating from the enforcing authorities. These administrative complements are euphemistically called ‘filling in the details’ of a policy set forth in statutes. But the ‘details’ are of the essence; they give meaning and content to vague contours.” 4 Selected Essays on Constitutional Law, 1; 75 University of Pa. Law Review, 614.
 

 Senator Elihu Root, in his address before the American Bar Association in 1916 (41 A. B. A. Rep., 355, 368-369), quoted by Mr. Frankfurter, said:
 

 
 *573
 
 “There is one special field of law development which has manifestly become inevitable * * '* . The Interstate Commerce Commission, the state public service commissions, the Federal Trade Commission, the powers of the Federal Reserve Board, the health departments of the states, and many other supervisory offices and agencies, are familiar illustrations. Before these agencies, the old doctrine prohibiting the delegation of legislative power has virtually retired from the field and given up the fight. ’ ’
 

 Mr. Frankfurter cited similar articles by Charles E. Hughes (later Mr. Chief Justice Hughes), “Some Aspects of the Development of American Law,” 39 N. Y. B. A. Rep. (1916), 266, 269-270, and by Mr. Justice Sutherland, “Private Rights and Government Control,” 42 A. B. A. Rep. (1917), 197.
 

 In the case of
 
 Davis et al., Civil Service Comm.,
 
 v.
 
 State, ex rel. Kennedy, Dir. of Public Service,
 
 127 Ohio St., 261, 187 N. E., 867, Judge Matthias said, at page 264:
 

 “There should be some limit to the tendency to confer upon boards, commissions, and individual executive officers power to proclaim an
 
 ipse dixit
 
 having the practical effect and force of law * * * . ”
 

 In the case of
 
 State, ex rel. Kildow,
 
 v.
 
 Industrial Commission,
 
 128 Ohio St., 573, 192 N. E., 873, Judge Stephenson said, at page 580:
 

 “We are not unmindful that reasonable rules promulgated by an administrative body under a valid grant from the legislature have the force and effect of law. Under our ever-expanding program we will even go further and recognize that such rules are a part of the law of the state.”
 

 In the case of
 
 Matz, Admr.,
 
 v.
 
 J. L. Curtis Cartage Co.,
 
 132 Ohio St., 271, 7 N. E. (2d), 220, it was held in paragraph 6 of the syllabus:
 

 “The General Assembly cannot delegate legislative power to an administrative board and any enactment
 
 *574
 
 which in terms does so is unconstitutional and void; but laws may be passed which confer on such a board administrative powers only.”
 

 In the course of the opinion, Judge Williams said, at page '282:
 

 “In recent years administrative boards have multiplied by leaps and bounds until today there are in Ohio twenty-eight or more state boards or bodies to which the Legislature has granted the power to make rules and regulations.
 

 “An examination of empowering statutes reveals that many of these boards could not function effectively without the rule-making prerogative. There are a number of cases in this jurisdiction that discuss delegation of power and they emphasize the principle that, if the authority conferred is administrative, constitutional limitations are not transgressed.”
 

 Whether the rule in question is one which the Tax Commissioner may or may not make and promulgate is not properly raised here. Our immediate inquiry is whether rule-making by the commissioner and appeal to or revision by the Board of Tax Appeals is such a proceeding as may be appealed to this court under its revisory jurisdiction of the proceedings of administrative officers.
 

 What rights and whose rights have been affected? What adjudication may be made in respect of this rule? On whom would our decision be binding? To attempt to establish the right or wrong of this rule for the valuation of property in the absence of any owner whose property is to be valued would be a violation of judicial ethics and should not be tolerated.
 

 As said by Dean Pound in his address before the American Bar Association at the Indianapolis Meeting, September 29, 1941 (A. B. A. Journal, November 1941, page 670):
 

 “In a court, the judges from their very training are impelled to conform their actions to certain known
 
 *575
 
 standards and to conform to settled ideals of judicial conduct. Professional habit and training lead them to hear both sides of every point scrupulously. Rules of law which have entered into their everyday habits of action lead them to insist that everything upon which they are to base an order or judgment must be before them in such a way that no party to be affected can be cut off from full opportunity to explain or refute it or challenge its application to his case. * * *
 

 ‘ ‘ Certainly the criterion of appealability ought to be whether the party seeking review has a substantial interest which is affected. That is what courts and statutes have come to in judicial proceedings, and it should be so as to any sort of proceeding.”
 

 In his application for a review of this rule by the Board of Tax Appeals, appellant Zangerle said: “If rule No. 2 is to prevail, it will involve a loss of over $625,000 in revenue from The Standard Oil Company alone to the city of Cleveland, schools and the county.”
 

 The principal testimony and exhibits offered in behalf of appellant Zangerle pertained to the method of valuing the oil refining plant of The Standard Oil Company located in Cuyahoga county, while appellant Austin’s evidence and exhibits pertained to the plants of The Standard Oil Company,. The Gulf Refining Company and The Sun Oil Company located in Lucas county. These companies are not before us and were not before the Board of Tax Appeals in this matter.
 

 In the brief on behalf of appellant Zangerle it is said:
 

 “The Standard Oil Company appealed from the judgment of the Court of Common Pleas, and on June 20, 1939, the Court of Appeals of the 1st District sitting in the 8th Appellate District by designation affirmed said judgment. * * * Thereafter, under date of June 27,1939, in the face of the judicial determination of the question, the Department of Taxation through the Tax Commissioner proceeded to promulgate and
 
 *576
 
 adopt rule
 
 2,
 
 which classifies as personalty, property adjudged to be real property. * * *
 

 “The oil companies now wish to classify their refinery structures, which have been historically treated as realty both by the companies and the assessing authorities, as personal property ‘machinery’ used in refining. * * *
 

 “The testimony discloses that the refining plant of The Standard Oil Company has been located on the land in question for about 65 years * * * .”
 

 In the opening sentence of their summary of the evidence before the Board of Tax Appeals, counsel for appellant Austin say:
 

 “The foregoing evidence discloses that the refining plants of the Standard Oil Company, Sun Oil Company and the Gulf Refining Company are located on land which was purchased for that purpose and have been so located on said properties for many years # # # J
 
 f
 

 Later on in the same brief, it is said:
 

 “In the instant case,
 
 the * * * refining plants and the structures and equipment thereto annexed were adaptable to that use to which the land was appropriated * * * .” (Italics ours.)
 

 Throughout the brief the evidence discussed is evidence pertaining to the properties of these three companies. In the concluding sentence of the brief on behalf of appellant Austin, it is said:
 

 “Since the rule is indefinite and uncertain and the
 
 property referred to in the testimony and this brief
 
 meets all the tests laid down by the decisions of the Ohio courts as being real estate and improvements thereon, said rule is unreasonable and illegal and should be held invalid by the court.” (Italics ours.)
 

 The Attorney General argues that because the Board of Tax Appeals “made visual examination of three petroleum refineries, two of which were located at Toledo and one of which was located at Cleveland, that
 
 *577
 
 such Board of Tax Appeals had before them many more facts than are or could be before this court,” we should not substitute our judgment for that of the Board of Tax Appeals and the Tax Commissioner. We shall not. 11 Ohio Jurisprudence, 646, Section 10.
 

 The Attorney General closes one of his briefs with this statement:
 

 “We submit that even if the issues presented by the transcript in the instant case do not constitute a justiciable question, they nevertheless present to this court jurisdiction in its capacity as ‘revisory jurisdiction’ as referred to in Section 2 of Article IV of the Ohio Constitution.”
 

 In the “Conclusion” of his last brief, the Attorney General contends that in addition to the power of this court to declare the rule reasonable and lawful or unreasonable and unlawful, this court has the right to
 
 modify
 
 the rule. This would imply that this court has the right to enact or prescribe a rule for the valuation for taxation purposes of real and personal property. In other words, it implies the power of the court to legislate, which we deny.
 

 Granting that these appellants, as chief fiscal officers of the respective counties, do have authority to raise, the question as to the method of making tax valuations of property within their respective counties by declaratory judgment procedure or otherwise, it cannot be claimed for a moment that whether such properties are to be valued finally as real or personal property may be adjudicated in the absence of the person whose property is to be affected. There is before us no concrete application of the rule or any of its 39 branches. No specification of error has been made as to any particular part of rule'No. 2 — the whole rule has been dumped in our lap and we are asked to declare it unreasonable and unlawful in the light of its application to the. Chiyahoga county properties of The Standard Oil Company and the Lucas county properties of The
 
 *578
 
 Standard Oil Company, The Gulf Refining Company and The Sun Oil Company. Some parts of rule No. 2 are definitely challenged, while other parts are definitely not challenged. Yet we are asked to declare th¿ whole rule unreasonable and contrary to law.
 

 Courts decide concrete and not abstract questions. No person to be affected may be denied full opportunity to be heard before any order may be made determining or affecting his rights or property. What we have here is two administrative officers contending with another set of administrative officers that the rules prescribed by the Department of Taxation for the conduct of county auditors in valuing real and personal property for taxation should be changed. It was contended in oral argument that if the auditors followed their own views as to how the property of oil refineries should be valued for taxation, they would be placed in jeopardy of losing their respective offices. No such question is before us. ‘ ‘ Sufficient unto the day is the evil thereof.” If such question is ever raised, appellants will be entitled to their respective days in court.
 

 Counsel cite authorities to the effect that a declaratory judgment may be had between two administrative officers as to the scope of the powers and duties of each. Suffice it to point out that this court has no jurisdiction to render a declaratory judgment in this case even if all the necessary parties were before it. In this connection, it may be said that some authorities on administrative rule-making have urged the use of the declaratory judgment procedure.
 

 If we were to entertain jurisdiction of this attempted appeal, our judgment would bind no one. Certainly it would not bind the property owner. Neither would it bind any county auditor, including appellants, for whether an auditor’s action in valuing a particular property as real or personal property was lawful would depend upon the facts of the particular case.
 
 *579
 
 The same may he said of the Tax Commissioner and the Board of Tax Appeals. Any rule which this court might declare reasonable in an abstract case could not be considered by us as binding in any future concrete case. The Tax Commissioner might amend or repeal it the next day.
 

 While the Attorney General argues that a judgment here would bind the auditors who are parties to the extent that the Department of Taxation could mandamus the auditor to obey, he does say:
 

 “It is true that the decision would not be binding as a judgment on any individual
 
 taxpayer,
 
 since no taxpayer was a party to the appeal.”
 

 When a case reaches this court involving the valuation for taxation of some specific property of a taxpayer and the question of whether rule No. 2 or any other rule is reasonable and lawful is presented, we will, uf course, pass upon such concrete question.
 

 For the foregoing reasons, this court
 
 sua sponte
 
 dismisses these appeals.
 

 Appeals dismissed.
 

 Weygandt, C. J., Matthias and Zimmerman, JJ., concur.
 

 Williams, J., concurs in the judgment.
 

 Hart, J., concurs in the syllabus and in the judgment.
 

 Bettman, J., not participating.