ULFERTS

v.

BLACK RIVER LOCAL SCHOOL DISTRICT BOARD OF EDUCATION.

Court of Common Pleas of Ohio,
Medina County.

No. 99 CIV 0901.

Decided July 18, 2000.

*O. Joseph Murray,* for plaintiff.
*John E. Britton,* for defendant.

JAMES L. KIMBLER, Judge.

## PROCEDURAL BACKGROUND

On October 12, 1999, defendant, Black River Local School District Board of Education, passed a resolution terminating plaintiff's employment. As a regular, nonteaching employee of defendant, plaintiff, Kathi Ulferts, filed this appeal pursuant to the provisions of R.C. 3319.081(C). Defendant thereafter timely filed a transcript of the proceeding relating to defendant's actions in terminating plaintiff's employment. Pursuant to a pretrial order issued in this case on March 8, 2000, the litigants filed briefs in support of their respective positions.

## FACTS

As of October 12, 1999, plaintiff had been a bus driver for defendant for eighteen years. On July 13, 1999, plaintiff and defendant entered into a

"SETTLEMENT AGREEMENT AND WAIVER," which resulted in the defendant reversing its decision of June 18, 1999, wherein it had terminated plaintiff's employment "for cause on the basis of neglect of duty, insubordination in work performance, misfeasance, nonfeasance and chronic attendance problems * * *." Instead of being fired, plaintiff was given, "an unpaid suspension of twenty (20) work days, beginning with the first day of the 1999–2000 contract year." Plaintiff acknowledged that the agreement constituted "a last chance opportunity relative to her employment" by defendant.

School bus drivers for defendant were required to attend a meeting on August 17, 1999. However, defendant did not attend said meeting on August 17, 1999.

Plaintiff first learned of the mandatory meeting for defendant's bus drivers on July 13, 1999, when she and her union president signed the aforementioned agreement, and thereafter met with John Wheadon, the treasurer of defendant. Plaintiff testified before the board that Wheadon told plaintiff and the union president about three precertification classes plaintiff had to attend in July, and the bus drivers' meeting on the "19th," which in the context of plaintiff's testimony meant August 19, 1999. Plaintiff then went home and marked this meeting, which she believed was scheduled for August 19, 1999, on her personal calendar. Plaintiff also testified that Wheadon told her and the union president that "info would be following."

In correspondence dated July 22, 1999, Wheadon sent a memo to defendant's bus drivers informing them of the mandatory in-service meeting for bus drivers, which meeting was scheduled for August 17, 1999. During her testimony before the board on October 12, 1999, plaintiff acknowledged receiving this correspondence prior to August 17, 1999. However, in response to a question from a board member, plaintiff stated:

"I can't honestly say when that [Mr. Wheadon's correspondence] came through the mail. During the time I was going over this letter with other mail, my father-in-law had a heart attack, so I had been running my mother-in-law back and forth from Medina to Fairview Hospital, so I was looking at a pile of mail. I don't know what date this came in, so I can't answer that; I'm sorry."

After receiving this correspondence from Wheadon, plaintiff did not realize that the mandatory meeting for bus drivers was on August 17, 1999, instead of August 19, 1999. In her words, "I read over it and thought it was a nine, the 19th. I did not look at the 17th. * * * I had 19 on the brain."

In order to attend the meeting she thought was on August 19, 1999, plaintiff, on August 18, 1999, returned home from a camping trip with family and friends. While doing laundry at a laundromat on August 18, 1999, she learned from another bus driver for the defendant that the mandatory meeting for bus drivers

had taken place on August 17, 1999. She immediately called Mike Miller and left a message for him. Miller is defendant's transportation coordinator. In addition, plaintiff immediately called the president of the union, who told plaintiff to call John, which plaintiff testified she did. The court concludes that "John" is John Wheadon, defendant's treasurer.

At the hearing on October 12, 1999, defendant's counsel stated, "For the record, a stipulation has been made among the parties here that Mrs. Ulferts believed that the meeting, the annual meeting of bus drivers, was on August 19, 1999."

Plaintiff testified that, during her eighteen years as a bus driver for defendant, she had missed one other in-service meeting, a meeting which she then made up. In response to questions from a board member, plaintiff testified that, for two reasons, she did not attempt to make up the meeting she had missed on August 17, 1999. First, make-up meetings "don't normally start until September, October," and, second, she "didn't know what was going to happen" relative to her employment with the defendant.

In a letter dated August 30, 1999 from defendant's treasurer and its interim superintendent, Charles Hawley, plaintiff was notified that her contract was terminated effective immediately because she had not attended the mandatory bus drivers' meeting on August 17, 1999.

Thereafter, plaintiff sought declaratory relief from this court in case No. 99 CIV 0778, which she filed against defendant and its superintendent. In consideration of plaintiff dismissing that case, defendant agreed to provide her with a hearing under R.C. 3319.081 relative to the termination of her contract.

The hearing in question took place on October 12, 1999, in executive session, at which the following individuals were present: the five board members of defendant; defendant's interim superintendent, Charles Hawley; defendant's treasurer, John Wheadon; defendant's counsel, John E. Britton; plaintiff; and plaintiff's counsel, O. Joseph Murray.

After the hearing, defendant deliberated and, on October 12, 1999, passed Resolution No. 320/99, which provides as follows:

"Kathleen Ulfert's Termination

"[Board member] Muntz moved and [board member] Gehring seconded a motion to approve the following resolution:

" 'WHEREAS the School Board has provided Kathleen Ulferts with a termination hearing on October 12 in executive session pursuant to stipulations agreed upon by the Board of Education;

" 'NOW THEREFORE, BE IT RESOLVED, the Black River Board of Education terminates the employment of Kathleen Ulferts effective September 27, 1999 and authorizes the treasurer to notify Mrs. Ulferts of the Board's decision.'

"Roll Call: Ayes–Twining, Muntz, Knapp, Gehring, McConnell. The President declared the motion carried."

Thereafter, plaintiff received a letter dated October 13, 1999, from defendant's treasurer. The text of the treasurer's letter is as follows: "You are hereby notified that at its regular meeting held on October 12, 1999, the Board of Education of the Black River Local School District adopted a Resolution terminating your employment effective September 27, 1999. I have enclosed a copy of that resolution." From this employment termination notice, plaintiff filed this appeal.

## DISCUSSION

██ The initial question before the court is whether the court has jurisdiction to entertain plaintiff's appeal. Defendant's position is that the court does not. Defendant's argument in this regard is based upon language in the agreement that plaintiff signed on July 13, 1999, which provides:

"Mrs. Ulferts acknowledges that this Agreement constitutes a last chance opportunity relative to her employment with the Board and, in exchange for the opportunity to remain conditionally employed as set forth above, she fully and knowingly waives any and all other rights she might otherwise enjoy under law and/or the collective bargaining agreement in effect between the BRSS [the Black River Support Staff] and the Board."

Defendant's argument in this regard is not well taken because plaintiff's waiver of her appeal rights in this agreement related to the board's action up to and including July 13, 1999, not to any action the board might take relative to her subsequent to that date. This conclusion is inescapable given the following stipulation of the plaintiff and defendant entered into on October 12, 1999: "The parties further agree that in a subsequent appeal to the Court of Common Pleas of a decision by the Board of Education to terminate Ms. Ulfert's employment, if any, the record on appeal would consist of these stipulations and the transcript of the October 12, 1999, hearing."

██ The next question before the court is whether R.C. Chapter 2506 applies to an appeal filed under R.C. 3319.081. Defendant's position is that R.C. Chapter 2506 does apply to this appeal. In her brief, plaintiff does not speak directly to this issue. However, she suggests that the court should make its decision based only on the language found in R.C. 3319.081.

While this issue in terms of binding precedent in this court's jurisdiction has not been resolved, the court hereby rules that R.C. Chapter 2506 does apply to the case *sub judice*. This ruling is based upon the following cases, all of which hold that R.C. Chapter 2506 applies to an appeal under R.C. 3119.081: (1) *In re Appeal of Sergent* (1976), 49 Ohio Misc. 36, 3 O.O.3d 308, 360 N.E.2d 761, a Montgomery County Common Pleas Court decision; (2) *Woerner v. Mentor Exempted Village School Dist. Bd. of Edn.* (1993), 84 Ohio App.3d 844, 619 N.E.2d 34, a Lake County Court of Appeals decision; and (3) *Scyoc v. Wellington Exempted Village School Dist. Bd. of Edn.* (Sept. 24, 1986), Lorain App. No. 4014, unreported, 1986 WL 10585.

R.C. 2506.04 provides:

"The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code."

The terms under which a contract of a nonteaching employee of a board of education may be terminated are set forth in R.C. 3319.081(C), which provides:

"The contracts as provided for in this section may be terminated by a majority vote of the board of education. Such contracts may be terminated only for violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance."

In 1983, the Ohio Supreme Court observed that the purpose of this section is to "provide employment security to regular nonteaching school employees." *Ohio Assn. of Pub. School Emp. v. Twin Valley Local School Dist. Bd. of Edn.* (1983), 6 Ohio St.3d 178, 182, 6 OBR 235, 238, 451 N.E.2d 1211, 1214.

More recently, the Supreme Court reiterated this point when it stated: "R.C. 3319.081 gives statutory job security to nonteaching local school district employees, in that it provides for termination of employment contracts *only* for the express enumerated reasons set forth in R.C. 3319.081(C), or for 'any other acts of misfeasance, malfeasance, or nonfeasance.'" (Emphasis *sic*.) *State ex rel.*

*Boggs v. Springfield Local School Dist. Bd. of Edn.* (1998), 82 Ohio St.3d 222, 226, 694 N.E.2d 1346, 1350.

 In exercising limited appellate jurisdiction in an appeal under R.C. Chapter 2506, the court is cognizant that "[i]n determining whether the board's decision is supported by reliable, probative and substantial evidence, the trial court is required to give 'due deference to the administrative resolution of evidentiary conflicts.'" *Adam v. Bath Twp. Bd. of Zoning Appeals* (1997), 121 Ohio App.3d 645, 648, 700 N.E.2d 669, 671, quoting *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267.

 The problem that the court is confronted with in applying this general principle of law to the facts of this case is that defendant's Resolution No. 320/99 does not include a finding that plaintiff committed one or more of the acts enumerated in R.C. 3319.081(C), justifying the termination of a nonteaching employee by a board of education. In the absence of such a finding, the court is called upon to speculate as to the reason(s) defendant fired plaintiff on October 12, 1999. Speculation is not a part of the court's appellate function.

When it conducted a hearing on October 12, 1999, defendant acted in a quasi-judicial capacity, a fact that defendant has conceded by arguing that R.C. Chapter 2506 applies to this case, for appeals under this chapter can only be had from actions of administrative officers and agencies resulting from "quasi-judicial" proceedings. *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 154, 61 O.O.2d 394, 396, 290 N.E.2d 562, 565.

What does the term "quasi-judicial" mean? The Ohio Supreme Court in *Kelley* quoted with approval the following language from the concurring opinion of Judge Williams in *Zangerle v. Evatt* (1942), 139 Ohio St. 563, 580, 23 O.O. 52, 59, 41 N.E.2d 369, 376: "[Q]uasi-judicial ' * * * signifies that the administrative boards from which an appeal may be taken act similarly to a court, to wit, witnesses are examined, a hearing is had and a finding or decision made all in accordance with statutory authority.'" *Kelley*, 32 Ohio St.2d at 153, 61 O.O.2d at 396, 290 N.E.2d at 565.

Accordingly, on October 12, 1999, after entering into stipulations with plaintiff and thereafter hearing and otherwise receiving evidence at plaintiff's hearing, defendant had the responsibility to weigh the evidence before it and to make findings based upon that evidence. Defendant did not follow this procedure because it failed to make any findings relative to plaintiff's conduct.

In sharp contrast to defendant's failure in this regard, the court notes that on June 18, 1999, when defendant initially fired plaintiff, defendant did so "for cause on the basis of neglect of duty, insubordination in work performance, misfeasance, nonfeasance and chronic attendance problems." With the exception of "chronic attendance problems," all of the reasons given by defendant on June 18, 1999, for

firing Ulferts, were acts that mirrored a number of the reasons for which a board of education, under the express terms of R.C. 3319.081, may fire a nonteaching employee. The court does not understand why such findings were not made after plaintiff's hearing on October 12, 1999.

The court has reviewed various appellate decisions within the Ninth District Court of Appeals relative to appeals under R.C. Chapter 2506. In *Scyoc v. Wellington Exempted Village School Dist. Bd. of Edn., supra* (Lorain County), it is clear that the school board, which fired a janitor pursuant to R.C. 3319.081, made a finding that he failed to secure school buildings on different occasions and that the failure in that regard "constituted nonfeasance, gross inefficiency, and gross neglect of duty, as well as violating policies of the school board." *Id.* at *1. Thus, the appropriate findings were made, and those findings were consistent with the statutory authority a school board has to fire a nonteaching employee under such circumstances. The common pleas court upheld the board's firing of the janitor, and the court of appeals upheld the trial court's decision.

In a different factual context, but still within the ambit of administrative appeals under R.C. Chapter 2506, see, also, *Adam v. Bath Twp. Bd. of Zoning Appeals*, 121 Ohio App.3d 645, 700 N.E.2d 669 (Summit County), and *Reese v. Copley Twp. Bd. of Trustees* (1998), 129 Ohio App.3d 9, 716 N.E.2d 1176 (Summit County), for examples of administrative bodies acting in quasi-judicial capacities making findings of fact based upon evidence before them.

Because defendant did not make findings of fact, which in turn would justify its lawful termination of plaintiff pursuant to the express terms of R.C. 3319.081, the court hereby disaffirms, and therefore reverses, defendant's decision to terminate plaintiff's employment effective September 27, 1999.

■ Assuming *arguendo*, however, that the court could lawfully speculate that plaintiff's failure to attend the meeting of the bus drivers on August 17, 1999 was "neglect of duty" and/or "malfeasance" or "nonfeasance" under R.C. 3319.081, and that defendant had the statutory right to terminate plaintiff's employment, particularly in light of the "last chance" agreement that Ulferts entered into with defendant on July 13, 1999, the court still has the right to disaffirm, and therefore reverse, defendant's decision if the decision is arbitrary, capricious, or unreasonable. R.C. 2506.04.

For the following reasons, the court finds that defendant's decision to terminate plaintiff's employment, under the circumstances associated with the fact that she missed a bus drivers' meeting on August 17, 1999, is arbitrary, capricious, and unreasonable. First, plaintiff honestly believed that the date of the meeting was August 19, 1999. Defendant even stipulated that such was the case. In fact, the uncontroverted evidence is that defendant's treasurer told plaintiff on July 13, 1999, that the meeting date was on the "19th." Plaintiff's testimony in this

regard was not contradicted by anyone, including defendant's treasurer who was present at plaintiff's hearing on October 12, 1999.

Second, plaintiff did not deny that she received the correspondence from defendant's treasurer concerning the fact that the bus drivers' meeting was on the "17th." Rather, she acknowledged receiving the notice and then went on to explain that the date of the 17th did not compute with her because she had the "19th" on her mind. Her explanation of this mistake is even more understandable given the fact that her father-in-law was in the hospital during the time she received said correspondence, and that she was busy running her "mother-in-law back and forth from Medina to Fairview Hospital."

Finally, in the court's opinion it is also significant that once before, in her eighteen years as an employee of the defendant, plaintiff missed an in-service day. When that occurred, the board permitted Ulferts to make up the missed in-service day. In fact, there is no evidence that plaintiff was disciplined in any way for failing to attend that in-service meeting. Thus, plaintiff had a reasonable expectation, even given the tenuous nature of her employment relationship with defendant,[1] that she would not be fired because she missed an in-service day for bus drivers as a result of initially writing on her calendar the date that defendant's treasurer told her the meeting would be held on and then failing to change the date on her calendar when she received a written notice from the treasurer indicating that the meeting was for August 17, 1999.

Accordingly, defendant's decision to terminate plaintiff's employment effective September 27, 1999 is also disaffirmed, and therefore reversed, on the basis that said decision is arbitrary, capricious, and unreasonable.

In light of the court's disaffirmance of the defendant's resolution terminating plaintiff's employment, defendant Black River Local School District Board of Education is ordered to reinstate plaintiff Kathi Ulferts to the position of school bus driver for said school district, subject, however, to the terms and conditions as established by the SETTLEMENT AGREEMENT AND WAIVER entered into by Kathi Ulferts and the Black River Support Staff, on the one hand, and the Black River Local School District Board of Education, on the other hand, on July 13, 1999.

Costs taxed to defendant.

*Judgment accordingly.*

---

1. In light of the court's reasons for the disaffirmance of the defendant's termination of plaintiff's employment, the court need not address plaintiff's argument that her personnel file was in essence "wiped clean" by the agreement she and defendant entered into on July 13, 1999. The court would observe, however, that this argument appears to rest upon the slenderest of reeds.