OPINION
{¶ 1} Appellant, Sandra O'Brien ("O'Brien"), is the Ashtabula County Auditor. She appeals from an adverse decision entering summary judgment in favor of the Ashtabula County Joint Vocational School ("JVS"). In the trial court, the parties' dispute centered around the type of documentation necessary for O'Brien to authorize monies to be drawn from the county treasury to pay JVS pursuant to its invoices. O'Brien maintained that she needed to have JVS submit original invoices from JVS' subcontractors before she could legally authorize funds for payment. JVS maintained that it was duty bound to safeguard such invoices for audit and public record purposes and that copies of such subcontractor invoices should be sufficient. The trial court held that O'Brien was required to authorize payment for JVS' invoices when authenticated copies of subcontractor's invoices were furnished to her office. On review, we find that no justiciable controversy existed between the parties. We therefore reverse the entry of summary judgment in favor of JVS and remand this matter to the trial court to order that the case be dismissed with prejudice.
 {¶ 2} JVS is a public entity created pursuant to R.C.3311.18. It is not a county agency and has its own board and treasurer. The trial court described it thusly: "the Ashtabula County Joint Vocational School is not a subordinate part of the county government, but is an independent statutory political subdivision and a third party contractor with the Ashtabula County Board of Commissioners."
 {¶ 3} In June 2003, JVS entered into a contract with the Ashtabula County Commissioners, acting for and on behalf of Ashtabula County Department of Jobs and Family Services ("ACDJFS"). The commissioners were funded by the federal government to provide workplace development services to disadvantaged youth in Ashtabula County, under the Workforce Investment Act of 1998.[1] ACDJFS was required to provide the services, but it could contract out this obligation to outside providers. JVS was the provider for the services. The JVS proposal for the provision of services was called the "Youth Opportunities" ("yO!") proposal. The contract's duration was for one year, from July 1, 2003, up to and including June 30, 2004. The contract was a renewal of two previous contracts entered into by these parties for the same purpose. JVS was to pay its staff and outside contractors from its own funds and, then, get reimbursed via monthly invoices, up to a maximum amount of $750,000 for the year.
 {¶ 4} Original invoices for JVS reimbursement were prepared by the JVS staff and submitted to ACDJFS for review and approval. After approval by ACDJFS, the invoice and accompanying documents would be forwarded to the county commissioners with a voucher for payment. Final approval for payment was then authorized by the county commissioners. Once approved by the commissioners, the voucher and accompanying documents were forwarded to O'Brien's office, where a warrant for payment by the county treasurer would be prepared. The warrant would allow JVS to draw funds from the county treasurer for reimbursement of its expenses.
 {¶ 5} O'Brien authorized reimbursement to JVS for all invoices issued by it under the previous two contracts. However, when JVS prepared invoices number 04-01 and 04-02 under the July 1, 2003 through June 30, 2004 contract, O'Brien notified the JVS Director that she would not honor the invoices, stating, "please note that I will be requiring original invoices and copies of all subcontracts associated with this program in order to process payments." This notification took place in September 2003, and between September and the end of December, 2003, the JVS Director, the State Auditor, and the county commissioners tried to persuade O'Brien to authorize payment of the invoices, but she refused. On January 5, 2004, the County Prosecutor, on behalf of JVS, filed a declaratory judgment lawsuit to obtain a court order to the effect that O'Brien had sufficient documentation with which to authorize reimbursement to it for JVS' services. Due to conflict of interest, the County Prosecutor withdrew from the litigation, and new counsel appeared for both JVS and O'Brien. JVS filed a first amended complaint, again seeking a declaratory judgment, but also seeking a writ of mandamus to order O'Brien to make the payments it demanded. O'Brien counterclaimed for a declaratory judgment that only original invoices were acceptable for her purposes. To clear up a technicality in the way the case was styled, JVS filed a second amended complaint, again requesting a declaratory judgment and a writ of mandamus.
 {¶ 6} During the pendency of the litigation, two invoices came to light that were issued in error by JVS. They were, in fact, amendments to invoices 04-01 and 04-02 and were issued in error.
 {¶ 7} Also during the pendency of the litigation, the parties worked out a compromise. The record does not reflect the date of the compromise, but the precipitating event was stated by counsel for JVS on May 4, 2004: "the fiscal agent for the yO program is going to change effective July 1, 2004, funds that are available for the yO program for the fiscal year ending June 30, 2004 must be encumbered and spent by Ashtabula County by June 30, 2004 or the State of Ohio will not reimburse Ashtabula County for such funds." O'Brien signed an affidavit on September 30, 2004, to the effect that all invoices under the 2003-2004 contract had been paid, so the compromise must have taken place between May 4, 2004 and September 30, 2004.
 {¶ 8} Both parties filed motions for summary judgment on October 1, 2004. The trial court held that the action for mandamus would not lie because the payments in question had been made, and that the claim for mandamus was moot. With respect to the summary judgment motions, it found that the issues raised in the motions were not moot. Although the contract in question had expired some months prior to its ruling, and the parties had worked out a compromise prior to the fiscal year end, the trial court found that the issues were still ripe for adjudication because JVS would undoubtedly have other contracts with the county. Thus, the issue of sufficient documentation would again arise between JVS and O'Brien and was, therefore, not moot.
 {¶ 9} The trial court further held that, pursuant to R.C.319.16, when O'Brien questioned a JVS invoice, it was tantamount to questioning the validity of the invoice, and she was, therefore, bound to notify the county commissioners of her disagreement.
 {¶ 10} Finally, the trial court held that, in this case, where the party presenting a claim for payment was itself a political subdivision, it may submit authenticated copies of invoices in lieu of original invoices, and that would satisfy the evidentiary requirements of R.C. 319.16. O'Brien timely appealed from the judgment entry of the trial court.
 {¶ 11} O'Brien has raised three assignments of error, which are as follows:
 {¶ 12} "[1.] The trial court erred in declaring that in questioning the sufficiency of evidentiary matter submitted with a claim for payment, a County Auditor is actually questioning the validity of the expenditure and must notify the Board of County Commissioners.
 {¶ 13} "[2.] The trial court erred in holding that the requirement of R.C. § 319.16, that original invoices, receipts, bills and checks be submitted as evidentiary matter in support of a claim for payment, could be satisfied in Plaintiff-Appellee's case by `authenticated copies' of such documents.
 {¶ 14} "[3.] The Trial Court erred in according special significance to JVS' public record obligations and holding that such obligations mean that R.C. § 319.16 does not apply to JVS in that `authenticated copies' of invoices, receipts, bills and checks should constitute acceptable `evidentiary matter' in connection with JVS's requests for payment from the County."
 {¶ 15} In light of the compromise that was worked about between the parties, we shall first address the question of whether the parties had a justiciable controversy capable of adjudication, or whether their controversy was mooted by the expiration of their contract and the payment of the invoices.
 {¶ 16} This case was initiated with the filing of a declaratory judgment complaint pursuant to Chapter 2721 of the Revised Code.
 {¶ 17} Declaratory judgment actions may be brought pursuant to R.C. 2721.03:
 {¶ 18} "Subject to division (B) of section 2721.02 of the Revised Code, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it."
 {¶ 19} Thus, under R.C. 2721.03, any person who is interested in a written contract whose rights are affected by a statute "may have determined any question of construction or validity arising under the instrument" or statute and "obtain a declaration of rights" under it.
 {¶ 20} "Person" is defined in R.C. 2721.01:
 {¶ 21} "As used in this chapter, `person' means any person, partnership, joint-stock company, unincorporated association, society, municipal corporation, or other corporation."
 {¶ 22} A board of education is a "person" capable of bringing suit under R.C. 2721.03.[2] Moreover, a joint vocational school district is a "separate government entity" created pursuant to R.C. 3311.18.[3] Therefore, JVS is an entity capable of filing a declaratory judgment action.
 {¶ 23} Although JVS is a "person" for purposes of filing an action under R.C. 2721.03, it did not satisfy the requirements of that statute for a declaration of its rights once it had been paid in full. Specifically, by October 1, 2004, when it filed its motion for summary judgment, the dispute that precipitated the filing of its declaratory judgment action in the first place had resolved: all invoices had been paid to JVS and the contract ending June 30, 2004 had expired. JVS admits as much in its motion for summary judgment: "[s]ince the filing of the Amended Complaint, Auditor O'Brien has issued warrants for all of the invoices submitted by ACJVS for reimbursement, which she previously had refused to do." Even if its contract for the yO! program was affected by R.C. 319.16 at the inception of the case, as the parties contend, it was no longer affected by O'Brien's interpretation of R.C. 319.16 after it received payment in full.
 {¶ 24} However, JVS contends that O'Brien's refusal to issue warrants for reimbursement to JVS "continues to be an issue which requires judicial determination." We disagree.
 {¶ 25} Whether a justiciable controversy exists is an issue that has been addressed by the Supreme Court of Ohio in the case of White Consolidated Industries v. Nichols, where the appellant was challenging the validity of certain procedural rules promulgated by the Director of the Ohio Environmental Protection Agency.[4] The appellant's challenge to the rules was not accompanied by any set of facts that established it was actually being affected by the administrative rules. The court quoted with approval from the prior case of Fortner v.Thomas:
 {¶ 26} "`Courts will not aid in making or revising rules of administrative officers, boards or commissions, being confined to deciding whether such rules are reasonable and lawful as applied to the facts of a particular justiciable case. (Zangerle v.Evatt (1942), 139 Ohio St. 563 (23 O.O. 52), approved and followed.)'"[5]
 {¶ 27} The court went on to give the following guidance as to when a justiciable controversy exists:
 {¶ 28} "Until the parties can come forward with a specific factual setting, without strictly resorting to hypotheticals and speculation, this cause does not present a justiciable controversy. This court is not inclined to decide cases on entirely hypothetical facts and render purely advisory opinions. We therefore hold that the appeal from the EBR to the court of appeals and from the court of appeals to this court presented no justiciable cause."[6]
 {¶ 29} Likewise, in the instant case, this court is not inclined to issue an advisory opinion on whether JVS had furnished documents for reimbursement under the 2003-2004 contract to O'Brien that should have satisfied the requirements of R.C. 319.16, where all of JVS' invoices had been paid and the controversy no longer exists. Nor is this court inclined to issue an advisory opinion with respect to future controversies between the parties that are not now before us. Such would not be a justiciable controversy as the Supreme Court of Ohio has defined it.
 {¶ 30} Moreover, we do not agree with the ruling of the trial court that, though the matter of actual payments to JVS was moot, there existed an exception to the mootness doctrine that compelled the trial court to treat the matter as an actual controversy.
 {¶ 31} In general, "`a moot case arises * * * where a judgment is sought, upon a matter which when it is rendered, cannot have any practical effect upon the issues raised by the pleadings.'"[7]
 {¶ 32} The first exception to the mootness doctrine occurs when issues are "`"`capable of repetition, yet evading review.'"'"[8] Under this exception, a trial court will rule, for example, on the legality of an abortion,[9] or a student's suspension from school,[10] because, in the case of an abortion, the pregnancy will be over by the time of appellate review;[11] and, in the case of a student's suspension from school, the student who challenges "school board rules generally graduate[s] before the case winds its way through the court system."[12] These temporal situations, however, are not analogous to the facts of the instant case. The trial court in its judgment entry suggested that, because the JVS contract was for one year, judicial review, including appellate review, was not possible within the county's fiscal year. While ordinarily a civil case may take more than one year to finally be adjudicated through the appellate system, we do not accept that the parties are without remedies to expedite the process where exigent circumstances exist. Cases dealing with extraordinary writs and injunctive relief are commonly disposed of in less than twelve months. The fact situation between JVS and O'Brien may be capable of repetition, but we do not accept that it will necessarily evade review.
 {¶ 33} Furthermore, we note that the situation may not be capable of repetition between these parties, at least as it respects the yO! program, because the record reflects that the program has been transferred from the auspices of Ashtabula County officials after June 30, 2004.[13]
 {¶ 34} "[T]here must be more than a theoretical possibility that the action will arise again. There must exist a `"reasonable expectation" or a "demonstrated probability" that the same controversy will recur involving the same complaining party.' * * * A probability of repetition has not been sufficiently demonstrated to this court."[14]
 {¶ 35} The second exception to the mootness doctrine concerns matters that involve "a matter of great public interest."[15] This court does not accept that this exception to the mootness doctrine applies in the instant case. The fact that the subject matter of the controversy involved a public contract concerning a large sum of money does not, by itself, make this case a matter of public or great general interest. In this respect, we are persuaded by the Tenth Appellate District, which stated the following in a case involving competitive bidding for the University of Toledo football stadium:
 {¶ 36} "We are unpersuaded that this case is of such great public importance that we should disregard our lack of jurisdiction. It is true that public contracts involve large sums of money and, at least incidentally, affect the public. However, we do not believe that this condition alone is sufficient to overcome the fact that this case is moot."[16]
 {¶ 37} For the reasons indicated, we hold that no justiciable controversy existed between these parties that called for a summary judgment entry by the trial court. The case should have been dismissed. We return this matter to the trial court for an order of dismissal with prejudice.
 {¶ 38} O'Brien's assignments of error are moot.
 {¶ 39} The judgment entry of the trial court is reversed, and the matter is remanded to the trial court to enter an order of dismissal with prejudice.
Ford, P.J., O'Toole, J., concur.
[1] Section 2801 et seq., Title 29, U.S. Code.
[2] Wilmington City School Dist. Bd. of Edn. v. Clinton Cty.Bd. of Commrs. (2000), 141 Ohio App.3d 232, 238.
[3] Mercure v. Bd. of Edn. (1976), 49 Ohio App.2d 409, 414. See, also, 1965 Ohio Atty. Gen. Ops. No. 65-167.
[4] White Consolidated Industries v. Nichols (1984),15 Ohio St.3d 7.
[5] Id. at 8, quoting Fortner v. Thomas (1970),22 Ohio St.2d 13, paragraph two of the syllabus.
[6] Id. at 9. See, also, Armco, Inc. v. Public Util. Comm.
(1982), 69 Ohio St.2d 401, 406.
[7] (Citations omitted.) Sedlak v. Solon (1995),104 Ohio App.3d 170, 178.
[8] State ex rel. Margolius v. Cleveland (1992),62 Ohio St.3d 456, fn. 1, quoting In re Protest Filed by Citizens forthe Merit Selection of Judges, Inc. (1990), 49 Ohio St.3d 102,103, quoting Storer v. Brown (1974), 415 U.S. 724, fn. 8;Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho
(1990), 52 Ohio St.3d 56, 61, quoting Southern Pacific TerminalCo. v. Interstate Commerce Comm. (1911), 219 U.S. 498, 515. See, also, In re Appeal of Suspension of Huffer from Circleville HighSchool (1989), 47 Ohio St.3d 12, paragraph one of the syllabus;State ex rel. The Repository v. Unger (1986),28 Ohio St.3d 418.
[9] James A. Keller, Inc. v. Flaherty (1991),74 Ohio App.3d 788, 792.
[10] In re Appeal of Suspension of Huffer from CirclevilleHigh School, supra.
[11] James A. Keller, Inc. v. Flaherty, supra, at 792, citingRoe v. Wade (1973), 410 U.S. 113, 117.
[12] In re Appeal of Suspension of Huffer from CirclevilleHigh School, supra, at 14.
[13] Affidavit of Sandra O'Brien dated Sept. 30, 2004, ¶ 19, incorporated into Motion for Summary Judgment of Sandra O'Brien.
[14] James A. Keller v. Flaherty, supra, at 792, quotingMurphy v. Hunt (1982), 455 U.S. 478, 482, citing Weinstein v.Bradford (1975), 423 U.S. 147.
[15] Id., citing Franchise Developers, Inc. v. Cincinnati
(1987), 30 Ohio St.3d 28.
[16] James A. Keller, Inc. v. Flaherty, supra, at 791-792.