[Cite as *State ex rel. Lanter v. Cincinnati*, 2020-Ohio-4973.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, EX REL. TIMOTHY LANTER, | : | APPEAL NOS. C-190708 C-190720 |
| | : | |
| Appellee/Cross-Appellant, | : | TRIAL NO. A-1604013 |
| vs. | : | |
| | : | *O P I N I O N.* |
| CITY OF CINCINNATI, OHIO | : | |
| HARRY BLACK, | : | |
| KIM NEAL, | : | |
| and | : | |
| CITIZEN COMPLAINT AUTHORITY, | : | |
| Appellants/Cross-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal: October 21, 2020

*Hardin, Lazarus & Lewis, LLC,* and *Kimberly A. Rutowski,* for Appellee/Cross-Appellant,

*Paula Boggs Muething,* City Soliciter, and *Jacklyn Gonzales Martin,* Assistant City Soliciter, for Appellant/Cross-Appellee.

**BERGERON, Judge.**

{¶1}    The city of Cincinnati created the Citizen Complaint Authority (CCA) as part of a settlement agreement to a federal lawsuit alleging racial discrimination within the Cincinnati Police Department.  The purpose of the CCA is to provide independent review, reporting, and recommendations concerning citizen complaints about police conduct.  After the CCA sustained a charge of discrimination against Cincinnati police sergeant Timothy Lanter, the police department investigated the matter anew and rejected the CCA's conclusions, which meant that Sergeant Lanter suffered no adverse employment consequences.  Nevertheless, he initiated this litigation seeking to overturn the CCA's recommendation, and the trial court obliged.  We conclude, however, that the trial court lacked subject matter jurisdiction because the matter before the CCA cannot qualify as a "quasi-judicial" proceeding capable of review by a common pleas court.  We therefore vacate the trial court's judgment granting relief under R.C. 2506.01, but affirm its decision denying Sergeant Lanter mandamus relief (on different grounds).

I.

{¶2}    The CCA is the product of what is known as the "Collaborative Agreement": a class action settlement blessed by a federal court and codified into the Cincinnati Administrative Code.  *State v. City of Cincinnati Citizen Complaint Auth.*, 2019-Ohio-5349, 139 N.E.3d 947, ¶ 4 (1st Dist.); *see also* Cincinnati Administrative Code Article XXVIII (hereafter "CCA Adm. Code").  The purpose of the Collaborative Agreement—and the CCA— is to improve relations between the community and police.  *Id.*  And to that end, the CCA has a director, investigators, and a seven-member citizen board; all tasked with independently reviewing complaints of police misconduct.  CCA Adm. Code Section 1, 2.  However, the CCA lacks the authority to impose any officer discipline on its own accord; it

can only offer recommendations to the city manager and to the Cincinnati Police Department. *Id.* at Section 3-D.

{¶3} This dispute arises over an episode allegedly colored by racist overtones. Daryl Spivey, an African-American, worked as a security guard at a building where the elevators cannot be accessed without entering a security code. Needing to use those elevators, Sergeant Lanter approached Mr. Spivey and asked him to enter the security code. Mr. Spivey complied, but he alleges that Sergeant Lanter responded with: "Thanks, boy, I appreciate it." Mr. Spivey immediately complained to his supervisor and filed a discrimination complaint with the CCA. As might be expected, Sergeant Lanter recounted a different version of these events, claiming that he instead said: "Thanks, buddy, I appreciate it." The CCA conducted an investigation and ultimately sustained the charge of discrimination, largely hinging its assessment on an evaluation of witness credibility. With both Mr. Spivey and Sergeant Lanter presenting conflicting accounts, the CCA placed emphasis on the recollection of another individual, Dale Vandehatert, who relayed to CCA investigators that he overheard someone say "boy," although he could not remember who said it.

{¶4} Consistent with the CCA Administrative Code, see Section 3-A, the police department conducted a parallel investigation. But the department reached an opposite conclusion from the CCA, determining that Sergeant Lanter had not called Mr. Spivey "boy" or otherwise discriminated against him. Mr. Vandehatert's account also proved pivotal to the police department's findings because he contradicted himself. In two interviews with police investigators, Mr. Vandehatert admitted uncertainty as to whether anyone uttered the word "boy." In light of these discrepancies, the police department rejected the CCA's report and declined to take any disciplinary action against Sergeant Lanter.

{¶5} The CCA board, however, sustained the CCA's conclusions. The CCA reasoned that the statements Mr. Vandehatert provided to its investigators were more reliable because he made them the morning of the incident, "while events were still fresh in his mind." In contrast, Mr. Vandehatert's two interviews with police department investigators occurred five days and over three months after the event.

{¶6} In the end, the CCA did not recommend any discipline. Instead, it suggested that the police department examine Sergeant Lanter's employment history to determine whether he might benefit from further training. And, as already noted, the police department declined to take any disciplinary action. Sergeant Lanter thus suffered no adverse employment action by virtue of the CCA's recommendations.

{¶7} Nevertheless, Sergeant Lanter appealed the CCA's report to the trial court, under the administrative review provisions in R.C. 2506.01, asking the court to overturn its conclusion. In addition, Sergeant Lanter also named the city of Cincinnati, the city manager, and the CCA director as respondents (collectively, the "City"), seeking relief in mandamus to require that the "inaccuracies" in the report be corrected. The court overturned the CCA's report in the administrative review, determining that the CCA's findings were not supported by a preponderance of substantial evidence, in part pointing to the conflicting stories of Mr. Vandehatert. But the court dismissed Sergeant Lanter's mandamus petition because the administrative appeal provided an adequate remedy at law. The City appealed the trial court's review of the CCA's report, prompting Sergeant Lanter to cross-appeal the dismissal of the mandamus petition.

II.

{¶8} In its sole assignment of error, the City asserts that the trial court lacked subject matter jurisdiction to review the CCA's report, describing the CCA's proceedings as

not quasi-judicial and challenging the finality of the CCA's "order" under R.C. 2506.01. Subject matter jurisdiction is a "condition precedent" to a court's power to hear a case. *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998); *see also Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19. Subject matter jurisdiction "is power conferred, by the Constitution and other law, on the court over a particular type of case." *WBCMT 2007-C33 Office 7870, LLC v. Breakwater Equity Partners, LLC*, 2019-Ohio-3935, 133 N.E.3d 607, ¶ 8 (1st Dist.). This principle is inviolate; it cannot be waived. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. And where a court nonetheless hears a case without having subject matter jurisdiction, any ensuing judgment is void. *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph three of the syllabus.

{¶9} Article IV of the Ohio Constitution provides that "courts of common pleas * * * shall have * * * such powers of review of proceedings of administrative officers and agencies as may be provided by law." Section 4(B). As applicable here, the Ohio Revised Code grants common pleas courts the power to review final orders by administrative agencies. R.C. 2506.01(A) ("every final order * * * of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas * * * ."). But the Ohio Supreme Court has limited this somewhat expansive language in R.C. 2506.01(A) to implicate "quasi-judicial proceedings only." *M.J. Kelley Co. v. City of Cleveland*, 32 Ohio St.2d 150, 290 N.E.2d 562 (1972), paragraph one of the syllabus. In other words, a common pleas court cannot review an agency decision under R.C. 2506.01 unless the agency acts "similarly to a court." *Id.* at 153, quoting *Zangerle v. Evatt*, 139 Ohio St. 563, 580, 41 N.E.2d 369 (1942) (Williams, J., concurring). As the Ohio Supreme Court elaborates, "[q]uasi-judicial authority is defined as

5

'the power to hear and to determine controversies between the public and individuals which require a hearing resembling a judicial trial.' " *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 72 Ohio St.3d 69, 71, 647 N.E.2d 769 (1995), quoting *State ex rel. Hensley v. Nowak*, 52 Ohio St.3d 98, 99, 556 N.E.2d 171 (1990). Thus, even if the CCA report constituted a final order otherwise appealable under R.C. 2506.01, the trial court would only enjoy subject matter jurisdiction if CCA undertakings constitute quasi-judicial proceedings. Therefore, we must address this threshold question.

{¶10} Although what *is* quasi-judicial can sometimes prove a thorny question, what is *not* quasi-judicial is more readily apparent: proceedings "are not quasi-judicial where there is no requirement for notice, hearing and the opportunity for introduction of evidence." *M.J. Kelley Co.*, at paragraph two of the syllabus. The basis for these three requirements traces its historic roots to the concept of due process. In 1890, the United States Supreme Court held that a Minnesota commission had provided no "semblance of due process" because "[n]o hearing [was] provided for; no summons or notice * * * [and] no opportunity provided * * * to introduce witnesses * * * ." *Chicago, M. & St. P. Ry. Co. v. State of Minn. ex rel. R.R. & Warehouse Comm.*, 134 U.S. 418, 457, 10 S.Ct. 462, 33 L.Ed. 970 (1890). In response to this criticism, Ohio and other states began requiring that regulatory commission proceedings operate similarly to "legal proceedings, including notice, hearing and opportunity to introduce testimony through witnesses." *Zangerle* at 571. And over time, these three requirements emerged as the barometer of whether a commission was quasi-judicial. *Id.*

{¶11} But it is up to the governing legislative body to bestow the trappings of due process on the agency at hand. *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 141 Ohio St.3d 113, 2014-Ohio-4364, 22 N.E.3d 1040, ¶ 36. "To be clear,

whether a proceeding is a quasi-judicial one from which an R.C. 2506.01 appeal may be taken depends upon what the law requires the agency to do, not what the agency actually does." *Id.* In other words, if the legislative body does not instill these quasi-judicial indicia in the agency in question, it forestalls judicial review through the mechanism of R.C. 2506.01. *Id.* ("When there is no requirement for notice, hearing, or an opportunity to present evidence, the proceedings are not quasi-judicial."), citing *M.J. Kelley Co.*, at paragraph two of the syllabus.

{¶12} Although Sergeant Lanter insists that CCA proceedings satisfy the quasi-judicial standard, he can identify no provision in the Administrative Code actually requiring a hearing or the ability to present evidence akin to a trial. In fact, he concedes that the CCA "has the option to hold a hearing." Indeed, one can search the language of the Administrative Code in vain for any right by an aggrieved officer or complaining witness[1] to compel a hearing. The Code leaves this question wholly within the board's discretion: "*If* the board conducts a review hearing * * * ." (Emphasis added.) CCA Adm. Code Section 3-D.

{¶13} Without any legal entitlement to a hearing, Sergeant Lanter features the CCA's requirement to give notice and its limited subpoena power as showcasing some of the indicia of a quasi-judicial proceeding. As Sergeant Lanter points out, the Ohio Supreme Court has characterized an agency proceeding as quasi-judicial despite the absence of any requirement to admit evidence. *Nuspl v. Akron*, 61 Ohio St.3d 511, 516, 575 N.E.2d 447 (1991). The statute in *Nuspl* provided that the party must have "an opportunity to be heard in his own behalf." *Id.* And the Court reasoned that, in that context, the right to be heard

---

[1] Although this case involves an officer, Sergeant Lanter's counsel acknowledged at oral argument that his position necessarily would encompass appeals by complaining witnesses as well. That would mean that anyone who did not like the CCA's assessment of a complaint could initiate an action in common pleas courts, opening the proverbial floodgates.

necessarily involved the right to notice and the admission of evidence. *Id.* But *Nuspl* lends no aid to Sergeant Lanter because the statute in *Nuspl* explicitly required the very thing that the Cincinnati Administrative Code makes optional: a hearing. *See id.*

{¶14} Furthermore, assuming arguendo that the CCA was required to hold a hearing, we would still encounter difficulty in describing its proceedings as quasi-judicial given the nature of the hearing described in the Administrative Code. If the CCA board elects to convene a hearing: (1) the hearing "*will not* be an adversarial proceeding"; (2) the board "*may* receive witness testimony"; (3) the hearing "*shall not* be open to the public"; (4) the officer has no automatic right to testify; and (5) the officer's attorney is not allowed to participate in the hearing (his or her role limited to client consultation). (Emphases added.) CCA Adm. Code Section 3-D. The "purpose" of any hearing "shall be to confirm the completeness of the CCA investigation" rather than to "reinvestigate the matter" or provide some type of appellate review (much less something resembling a trial). *Id.* In short, the "hearing" envisioned by Section 3-D is not the prototypical adversarial hearing, replete with the protections of due process. (And, as we recently observed, the CCA board has not convened a hearing "in the 17-year history of the CCA * * * ." *City of Cincinnati Citizen Complaint Auth.*, 2019-Ohio-5349, 139 N.E.3d 947, at ¶ 6).

{¶15} As a fallback, Sergeant Lanter maintains that CCA proceedings should be considered quasi-judicial because, in his view, the board actually held a hearing at which his attorney spoke (thus presenting "evidence"). We see two problems with this point. First, as the Ohio Supreme Court reminds us, we must focus on what the law requires the agency to do, rather than what the agency does. *State ex rel. Mun. Constr. Equip. Operators' Labor Council*, 141 Ohio St.3d 113, 2014-Ohio-4364, 22 N.E.3d 1040, at ¶ 36. Second, this argument represents a strained contortion of the record. The CCA board allows public

comment during its sessions, and Sergeant Lanter's attorney spoke for six minutes during the public comment portion of the meeting in which the board approved the report. This six-minute soliloquy cannot transform the board's session into a "hearing" under any stretch of the imagination.

{¶16} Because the CCA is not required to hold a hearing, we conclude that its proceedings as challenged in this appeal are not quasi-judicial, which obviates our need to evaluate the City's second argument regarding whether the CCA's disposition constitutes a final order under R.C. 2506.01. The trial court accordingly erred in reviewing the CCA's findings because it lacked subject matter jurisdiction. We therefore sustain the City's assignment of error, vacate the trial court's judgment overruling the CCA's report, and remand for an entry of dismissal for want of subject matter jurisdiction.

III.

{¶17} Turning to Sergeant Lanter's cross-appeal, in his sole assignment of error, he argues that if CCA proceedings are not quasi-judicial (as we have just concluded), the trial court erred in dismissing his mandamus petition because he would lack any legal remedy. But because Sergeant Lanter has not demonstrated a clear legal duty to modify the CCA's report, we affirm the trial court's dismissal of his application for a writ of mandamus, albeit on different grounds.

{¶18} A writ of mandamus constitutes an "extraordinary remedy," *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 18, that a court should issue "with great caution and discretion." *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 166, 364 N.E.2d 1 (1977). To obtain a writ of mandamus, a petitioner must show that: "(1) he has a clear legal right to the relief requested, (2) [the official] is under a clear legal duty to perform the requested acts, and (3) [the petitioner] has no plain and adequate

remedy in the ordinary course of the law." *State ex rel. Daniels v. Russo*, 156 Ohio St.3d 143, 2018-Ohio-5194, 123 N.E.3d 1011, ¶ 7. We review the trial court's dismissal of the petition for a writ of mandamus de novo. *State ex rel. Felson v. McHenry*, 146 Ohio App.3d 542, 2001-Ohio-4265, 767 N.E.2d 298, ¶ 5 (1st Dist.).

{¶19} We consider first the second inquiry, regarding whether the CCA bears a clear legal duty to perform the requested acts (although Sergeant Lanter's right and duty arguments appear inextricably intertwined). Sergeant Lanter insists that he has a clear legal right—and that the CCA has a clear legal duty—to correct "inaccuracies" in the CCA's report. But he points to no provision in the Administrative Code (or elsewhere) granting him the right to demand this modification or otherwise requiring the CCA to undertake such an exercise. Instead, Sergeant Lanter attempts to fashion this right—and corresponding duty—by highlighting three "duties" of the CCA.

{¶20} First, Sergeant Lanter claims that the CCA has a duty to resolve complaints in a "fair and efficient" manner. To support this point, however, Sergeant Lanter isolates a phrase in the section of the Administrative Code outlining the CCA's purpose. That section provides, in largely hortatory language, that "[t]he CCA's mission will be to * * * review and resolve all citizen complaints in a fair and efficient manner." CCA Adm. Code Section 1. Not only is this language aspirational (it is a mission statement), but it is also too vague to create a clear legal duty. For mandamus to lie, the duty "must be specific, definite, clear and unequivocal." *State ex rel. Karmasu v. Tate*, 83 Ohio App.3d 199, 205, 614 N.E.2d 827 (4th Dist. 1992) (holding that the First Amendment to the U.S. Constitution is too vague to create a duty suitable for mandamus), citing 67 Ohio Jurisprudence 3d, Mandamus, Procedendo and Prohibition, Section 19 at 218 (1986); *see also State ex rel. Manley*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, at ¶ 27 (noting that mandamus is appropriate "where the

10

right is clear, and does not depend upon complication of disputed facts"), quoting *State ex rel. Libby–Owens–Ford Glass Co. v. Indus. Comm.*, 162 Ohio St. 302, 307, 123 N.E.2d 23 (1954).

{¶21} For the second duty, Sergeant Lanter asserts that the CCA has the duty to ensure that its reports contain accurate information as the product of a "fair and impartial investigation." Again, however, the roots of this "duty" trace to the purpose section creating the CCA: "It is essential that the CCA uniformly be perceived as fair and impartial * * * ." CCA Adm. Code Section 1. Much like the language above about "fair and efficient," this section exhorts an aspiration as to how the CCA will be perceived, rather than imposing a clear legal duty that Sergeant Lanter entreats us to recognize. Such amorphous language and duties are simply inadequate for relief so extraordinary as mandamus—they "must be specific, definite, clear and unequivocal." *State ex rel. Karmasu* at 205.

{¶22} Finally, Sergeant Lanter posits that the CCA has a duty to provide a "fair hearing." But he declines to reconcile this point with the language of the Administrative Code discussed above or to show how the CCA violated the requirements of the Administrative Code. As we have explained, the board has no obligation to hold, and neither does a complaining party have a right to compel, a hearing. CCA Adm. Code Section 3-D. And even if the board convenes a hearing, it is not the prototypical fact-finding inquiry that Sergeant Lanter imagines. *Id.*; *State ex rel. Auglaize Mercer Community Action Comm., Inc. v. Ohio Civ. Rights Comm.*, 73 Ohio St.3d 723, 726, 654 N.E.2d 1250 (1995) (holding that mandamus could not be used to require a hearing where the statute only required a "review"); *State v. Indus. Comm. of Ohio*, 10th Dist. Franklin No. 79AP-257, 1979 WL 209565, *2 (Dec. 28, 1979) (noting that mandamus could require a hearing officer to support orders with facts and reasons only if the statute specifically created those duties);

11

*State ex rel. Smith v. McDonnell*, 8th Dist. Cuyahoga No. 95786, 2010-Ohio-6035, ¶ 4 (holding that mandamus was inappropriate because relator could not establish that he possessed a clear legal right to a hearing or that the judge had a clear legal duty to provide one).

{¶23} Based on the allegations in Sergeant Lanter's mandamus complaint, we see no clear legal duty that could warrant such extraordinary relief. We accordingly overrule his assignment of error and affirm the trial court's dismissal of his complaint in mandamus.

\*         \*         \*

{¶24} In light of the above analysis, we sustain the City's assignment of error and overrule Sergeant Lanter's assignment of error. We thus vacate the trial court's judgment overruling the CCA's report and remand for entry of dismissal for want of subject matter jurisdiction, and we affirm the trial court's dismissal of Sergeant Lanter's petition for a writ of mandamus.

Judgment affirmed in part, vacated in part, and cause remanded.

**MYERS, P. J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion