[Cite as *Grater v. Damascus Twp. Trustees*, 2021-Ohio-1929.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

CHARLES GRATER,

    APPELLANT/CROSS-APPELLEE,        CASE NO. 7-20-09

    v.

DAMASCUS TOWNSHIP TRUSTEES,        O P I N I O N

    APPELLEE/CROSS-APPELLANT.

Appeal from Henry County Common Pleas Court
Trial Court No. 18 CV 00139

**Judgment Vacated and Cause Remanded**

**Date of Decision:   June 7, 2021**

APPEARANCES:

    *Marvin A. Robon and Zachary J. Murry* for Appellant/Cross-Appellee

    *Katie L. Nelson* for Appellee/Cross-Appellant

**MILLER, J.**

{¶1} Appellant/cross-appellee, Charles Grater, and appellee/cross-appellant, the Damascus Township Trustees (the "Trustees"), appeal the October 19, 2020 judgment of the Henry County Court of Common Pleas upholding the Trustees' declaration that a nuisance exists on Grater's property. For the reasons that follow, we vacate the judgment of the trial court and remand this matter to the trial court.

## I. Facts and Procedural History

{¶2} Grater is the owner of a parcel of real property situated on County Road M in McClure, Ohio (the "Property"). Grater's use of the Property has been the subject of a long-running dispute between Grater and the Trustees. In June 2017, complaints were filed in the Napoleon Municipal Court charging Grater with numerous criminal violations of the Damascus Township Zoning Resolution (the "Zoning Resolution"). *State v. Grater*, 3d Dist. Henry Nos. 7-18-01, 7-18-02, 7-18-03, 7-18-04, 7-18-05, 7-18-06, 7-18-07, 7-18-08, 7-18-09, 7-18-10, 7-18-11, 7-18-12, 7-18-13, 7-18-14, 7-18-15, 7-18-16, 7-18-17 and 7-18-18, 2018-Ohio-3000, ¶ 2. Specifically, the complaints charged Grater with illegally maintaining a junkyard on the Property and with using the Property to dump or store garbage, refuse, scrap metal, or rubbish in violation of the Zoning Resolution. *Id.* at ¶ 2, 9. At trial, evidence was presented showing that the Property contained "old or discarded metal objects * * *, including rusting tire rims and barrels as well as piles of metal." *Id.*

at ¶ 40. In addition, the evidence depicted "a multitude of old, rusty vehicles in various stages of operability" along with "individual parts to automobiles stored in the open, stacks of pallets and other old wood, and piles of metal and other materials stacked on trailers." *Id.* at ¶ 41. We described some of the evidence presented at the trial as portraying "a sprawling assemblage which, by 2016, covered most of the Property and spilled out onto at least two adjacent or contiguous parcels of real estate." *Id.* at ¶ 10. Based on this evidence, the Napoleon Municipal Court found Grater guilty on all of the charges in the complaints. *Id.* at ¶ 3. Grater appealed, and on July 30, 2018, we affirmed Grater's convictions.[1] *Id.* at ¶ 42, 56.

{¶3} On August 27, 2018, the Trustees convened a regularly scheduled public meeting. At the meeting, Greg Smith and Eric Johnson, two of the three Trustees, passed a resolution pursuant to R.C. 505.87 declaring the existence of a nuisance on the Property.[2] Although the date, time, and location of the meeting were public knowledge, Grater was not given specific notice that the Property would be discussed at the meeting or that the Trustees would be considering whether to declare a nuisance on the Property.

{¶4} On or about September 10, 2018, the Henry County Sheriff posted a notice on the principal structure on the Property. The notice provided as follows:

---

[1] Grater subsequently appealed to the Supreme Court of Ohio, which declined to accept jurisdiction. *State v. Grater*, 154 Ohio St.3d 1444, 2018-Ohio-4962.
[2] The third Trustee was apparently out of state during the August 27, 2018 meeting.

**Re:  NOTICE OF ABATEMENT/REMOVAL OF A NUISANCE**

Dear Mr. Grater:

Please be advised that pursuant to Section 505.87 of the Ohio Revised Code, the Board of Damascus Township Trustees (the "Board") declared your maintenance of the refuse and other debris on [the Property] [to] constitute[] a nuisance, of which you are hereby ordered to remove or abate.  See R.C. 505.87(A) and (B)(1).  More specifically, you have seven (7) days from the date of this letter to remove or abate the nuisance (refuse and other debris), which includes, but is not limited to, all of the junk motor vehicles, scrap, rubbish, pallets, tires, etc.

If the nuisance is not removed or abated, or if provision for its abatement or removal is not made, within seven (7) days of the date of this letter, the Board shall provide for the abatement or removal, and any expenses incurred by the Board in performing that task shall be entered upon the tax duplicate and become a lien upon the land from the date of entry.  See R.C. 505.87(B)(2).

(Capitalization and boldface sic.) The letter, which was dated September 10, 2018, was signed by Smith and Johnson as well as by the Damascus Township Zoning Inspector.

{¶5} After receiving the notice, Grater sent letters to the Trustees indicating that he was appealing the Trustees' nuisance declaration and requesting an evidentiary hearing be conducted with respect to the nuisance declaration.  The Trustees granted the request and held a hearing on October 9, 2018.  At the beginning of the hearing, Grater requested Smith and Johnson recuse themselves.  In support of his request for recusal, Grater argued that Smith and Johnson could not serve as impartial finders of fact because they voted to approve the August 27,

2018 resolution declaring a nuisance on the Property and signed the September 10, 2018 abatement notice. Grater maintained that Smith and Johnson's prior actions demonstrated that they had prejudged the matter. However, Smith and Johnson declined to recuse themselves, and the hearing proceeded. During the hearing, Grater, who was represented by counsel, was given an opportunity to cross-examine witnesses, present his own evidence, and testify on his own behalf. At the close of the hearing, the Trustees took the matter under advisement. At their next regularly scheduled meeting on October 29, 2018, the three Trustees unanimously passed a resolution reaffirming the August 27, 2018 nuisance declaration and again declaring the existence of a nuisance on the Property.

{¶6} On November 9, 2018, Grater appealed the Trustees' nuisance declaration to the trial court. Grater's notice of administrative appeal included a request for injunctive relief to prevent the Trustees from taking action to abate the alleged nuisance and from enforcing the Zoning Resolution[3] with respect to his use of the Property.

{¶7} On May 29, 2019, Grater filed a motion for summary judgment. On June 28, 2019, the Trustees filed a motion requesting that the trial court dismiss Grater's motion for summary judgment or, alternatively, that the trial court treat Grater's motion for summary judgment as a brief in support of his administrative

---

[3] While Grater's arguments in the trial court and on appeal are couched in terms of the Zoning Resolution, the Trustees were in fact acting pursuant to R.C. 505.87 rather than the provisions of the Zoning Resolution.

appeal. The Trustees' motion also indirectly asked the trial court to consider their June 28, 2019 motion as their brief in opposition to Grater's administrative appeal. On July 29, 2019, Grater filed a combined memorandum in opposition to the Trustees' June 28, 2019 motion and reply brief in support of his motion for summary judgment.

{¶8} On March 11, 2020, the trial court denied Grater's motion for summary judgment. In addition, the trial court purported to grant the Trustees' motion for summary judgment despite the fact that the Trustees never filed a motion for summary judgment. This irregularity aside, the trial court determined that Grater received adequate notice and process with respect to the nuisance declaration, that the nuisance declaration was not tainted by Smith and Johnson's failure to recuse themselves from the October 9, 2018 hearing, and that the nuisance declaration was not against the weight of the evidence. However, the trial court determined there were genuine issues of material fact concerning whether Grater's use of the Property was permitted under the Zoning Resolution as a valid non-conforming use. The trial court ordered that the "matter regarding non-conforming use/grandfather clause" be set for trial. The trial court did not address Grater's request for injunctive relief in its March 11, 2020 judgment entry.

{¶9} On June 3, 2020, the Trustees filed a "motion for partial relief from judgment pursuant to Civ.R. 60" asking the trial court to vacate the portion of its

March 11, 2020 judgment relating to the Zoning Resolution's non-conforming use provisions. On July 8, 2020, Grater filed a memorandum in opposition to the Trustees' motion, in which Grater argued that the trial court's March 11, 2020 judgment was "not a final order for which a Civ.R. 60 motion is available." On July 24, 2020, the Trustees filed a memorandum in support of their Civ.R. 60 motion, in which they requested that the trial court convert their Civ.R. 60 motion into a motion for reconsideration if the trial court concluded that Civ.R. 60 was inapplicable.

{¶10} A hearing was held on October 8, 2020, as ordered in the trial court's March 11, 2020 judgment entry. At the hearing, the Trustees renewed their motion for reconsideration, which the trial court denied. On October 19, 2020, the trial court issued a judgment entry that provided as follows:

> The Court heard testimony and accepted evidence. At the close of [Grater's] evidence, counsel for [the Trustees] moved for directed verdict pursuant to Civ.R. 50 stating that [Grater] failed to prove that the use of his property qualified as a non-conforming use. The Court granted [the Trustees'] Motion for Directed Verdict, finding the Motion of [Grater] for Summary Judgment, as it pertains to the issue of non-conforming use (grandfather clause), not well-taken and is hereby denied.
>
> For the reasons stated herein, as well as in this Court's March 11, 2020 Judgment Entry, the Court finds the Motion of [Grater] for Summary Judgment in its entirety is not well-taken and is hereby denied. In effect, this Court finds that there is a preponderance of reliable, probative, and substantial evidence supporting [the Trustees'] October 29, 2018 administrative decision declaring [Grater's] property a nuisance. The decision of [the Trustees'] that [Grater's] property is a nuisance is hereby affirmed.

As with the trial court's March 11, 2020 judgment entry, the trial court's October 19, 2020 judgment entry did not address Grater's request for injunctive relief.

## II. Assignments of Error

{¶11} On November 5, 2020, Grater timely filed a notice of appeal. He raises the following two assignments of error for our review:

> **1. The trial court committed reversible error by denying Mr. Grater's motion for summary judgment on his appeal when the undisputed facts of this case show that the Damascus Township Trustees never provided him with: (a) notice of the nature of the nuisance on his property; and/or (b) an opportunity to be fairly heard in challenge of said designation-a violation of Mr. Grater's fundamental Constitutional rights.**
>
> **2. The trial court committed reversible error by entering judgment in favor of the Damascus Township Trustees when the evidence comprising the record below unequivocally establishes that Mr. Grater's use of the property, and the character of the same, has been unchanged since prior to the enaction of the Township's zoning requirements and Mr. Grater's property is exempted and/or "grandfathered" from that statute.**

On November 16, 2020, the Trustees timely filed a notice of cross-appeal. They raise the following assignment of error for our review:

> **1. The trial court erred by failing to grant the Trustees' motion to dismiss and motion for reconsideration of the same.**

Because they concern interrelated issues, we will address Grater's assignments of error and the Trustees' assignment of error together.

### III. Discussion

{¶12} In his assignments of error, Grater argues the trial court erred by affirming the Trustees' nuisance declaration. Specifically, Grater contends the trial court erred because the record shows that he was not provided with adequate notice or a fair opportunity to be heard on the Trustees' original nuisance declaration of August 27, 2018. He also contends his due-process rights were violated by Smith and Johnson's failure to recuse themselves from the October 9, 2018 hearing. In addition, Grater maintains the trial court erred because the Zoning Resolution's "non-conforming use/grandfather clause provisions exempted [his] property from classification as a nuisance in this case." In their assignment of error, the Trustees argue the trial court erred by denying their motion to dismiss and by failing to grant their motion upon reconsideration. They claim the trial court should not have conducted the October 8, 2020 hearing regarding the Zoning Resolution's non-conforming use provisions because this was a nuisance-abatement action pursuant to R.C. 505.87 rather than a zoning-violation case.

{¶13} However, before we can reach the merits of the parties' assignments of error, we must first consider whether the trial court had subject-matter jurisdiction over Grater's appeal from the Trustees' nuisance declaration. Although the issue of the trial court's subject-matter jurisdiction was not raised by the parties in the trial court or on appeal, "a reviewing court may consider a challenge to the court's

subject-matter jurisdiction for the first time on appeal either at the parties' suggestion or sua sponte * * *." (Citations omitted.) *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, ¶ 27.

{¶14} "Subject matter jurisdiction is a 'condition precedent' to a court's power to hear a case." *State ex rel. Lanter v. Cincinnati*, 1st Dist. Hamilton Nos. C-190708 and C-190720, 2020-Ohio-4973, ¶ 8, quoting *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998). "'Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits' and 'defines the competency of a court to render a valid judgment in a particular action.'" *Cheap Escape Co., Inc. v. Haddox, LLC*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 6, quoting *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). "A judgment rendered by a court lacking subject matter jurisdiction is void ab initio." *Patton v. Diemer*, 35 Ohio St.3d 68 (1988), paragraph three of the syllabus. The Ohio Constitution confers upon appellate courts the authority to vacate the void judgments of inferior courts within their respective districts. *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, ¶ 48. This authority extends to instances where an appellate court determines sua sponte that a trial court's judgment is void for lack of subject-matter jurisdiction. *See Miller ex rel. Lafountain v. McMichael*, 3d Dist. Paulding No. 11-03-08, 2003-Ohio-6713, ¶ 7-12; *DuFresne v. DuFresne*, 6th Dist. Erie No. E-00-027, 2000 WL 1545044, *1-2 (Oct. 20, 2000).

{¶15} This case was filed in the trial court as an administrative appeal from the Trustees' nuisance declaration. In the context of administrative appeals, "[c]ourts of common pleas only have 'such powers of review of proceedings of administrative officers and agencies as may be provided by law.'" *Clifton Care Ctr. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 12AP-709, 2013-Ohio-2742, ¶ 9, quoting Ohio Constitution, Article IV, Section 4(B). "Jurisdiction over an administrative appeal must thus be granted by specific statutory authority." *Southworth v. Marion Twp. Bd. of Trustees*, 4th Dist. Pike No. 15CA854, 2016-Ohio-1005, ¶ 20. R.C. Chapter 2506, under which Grater filed his administrative appeal, is one such source of statutory authority. *See AT&T Communications of Ohio, Inc. v. Lynch*, 132 Ohio St.3d 92, 2012-Ohio-1975, ¶ 8.

{¶16} Under R.C. 2506.01(A), "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code." As used in R.C. 2506.01(A), "final order, adjudication, or decision" means "an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person * * *." R.C. 2506.01(C). However, "even if an administrative action appears to constitute a 'final order, adjudication, or decision' as defined by R.C.

2506.01(C), the action is not necessarily appealable under R.C. 2506.01." *State ex rel. Unterbrink v. Elida Local Schools Bd. of Edn.*, 3d Dist. Allen No. 1-20-22, 2020-Ohio-5378, ¶ 26. This is because the Supreme Court of Ohio "has limited [the] somewhat expansive language in R.C. 2506.01(A) to implicate 'quasi-judicial proceedings only.'" *State ex rel. Lanter* at ¶ 9, quoting *M.J. Kelley Co. v. Cleveland*, 32 Ohio St.2d 150 (1972), paragraph one of the syllabus. "In other words, a common pleas court cannot review an agency decision under R.C. 2506.01 unless the agency acts 'similarly to a court.'" *Id.*, quoting *M.J. Kelley Co.* at 153, quoting *Zangerle v. Evatt*, 139 Ohio St. 563, 580 (1942) (Williams, J., concurring).

{¶17} Quasi-judicial authority is "'the power to hear and determine controversies between the public and individuals that *require* a hearing resembling a judicial trial.'" (Emphasis sic.) *State ex rel. Upper Arlington v. Franklin Cty. Bd. of Elections*, 119 Ohio St.3d 478, 2008-Ohio-5093, ¶ 16, quoting *State ex rel. Wright v. Ohio Bur. of Motor Vehicles*, 87 Ohio St.3d 184, 186 (1999). When determining whether a proceeding is a quasi-judicial one from which an R.C. 2506.01 appeal may be taken, the court must focus on what the relevant statute or ordinance demands of the agency. *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 141 Ohio St.3d 113, 2014-Ohio-4364, ¶ 36. "When there is no requirement for notice, hearing, or an opportunity to present evidence, the proceedings are not quasi-judicial." *Id.*, citing *M.J. Kelley Co.* at paragraph two of

the syllabus. Therefore, to determine whether the Trustees' nuisance declaration resulted from a quasi-judicial proceeding from which an R.C. 2506.01 appeal could be taken, we must look to the statute or ordinance authorizing the Trustees to issue the nuisance declaration.

{¶18} From the text of the September 10, 2018 notice of abatement and the October 29, 2018 resolution declaring a nuisance on the Property, it is evident that the Trustees declared a nuisance on the property pursuant to R.C. 505.87. The version of R.C. 505.87 in effect at the time of the nuisance declaration provided, in relevant part, as follows:

> (A) A board of township trustees may provide for the abatement, control, or removal of vegetation, garbage, refuse, and other debris from land in the township, if the board determines that the owner's maintenance of that vegetation, garbage, refuse, or other debris constitutes a nuisance.
>
> (B) At least seven days before providing for the abatement, control, or removal of any vegetation, garbage, refuse, or other debris, the board of township trustees shall notify the owner of the land and any holders of liens of record upon the land that:
>
> (1) The owner is ordered to abate, control, or remove the vegetation, garbage, refuse, or other debris, the owner's maintenance of which has been determined by the board to be a nuisance;
>
> (2) If that vegetation, garbage, refuse, or other debris is not abated, controlled, or removed, or if provision for its abatement, control, or removal is not made, within seven days, the board shall provide for the abatement, control, or removal, and any expenses incurred by the board in performing that task shall be entered upon the tax duplicate and become a lien upon the land from the date of entry.

R.C. 505.87 (June 18, 2010) (current version at R.C. 505.87 (Apr. 12, 2021)). By its terms, R.C. 505.87 does not require the board of township trustees to give the affected landowner notice and an opportunity to present evidence at a hearing before determining that a nuisance exists on the landowner's property. Under R.C. 505.87, the board of township trustees is obliged to give notice to the affected landowner only after the board has determined that a nuisance exists on the landowner's property. Furthermore, R.C. 505.87 does not require the board of township trustees to afford the affected landowner an opportunity for a post-notice evidentiary hearing where the board can reconsider its determination. R.C. 505.87 simply does not require that the board of township trustees conduct a hearing of any kind when making a nuisance determination. Consequently, we conclude that R.C. 505.87 proceedings are not quasi-judicial in nature and that a nuisance determination made under R.C. 505.87 is not a quasi-judicial determination.

{¶19} Many of our sister courts of appeals have reached the same conclusion when confronted with administrative appeals from nuisance declarations issued under comparable nuisance-abatement statutes and ordinances. The most instructive of these cases is *Champion Mall Corp. v. Champion Twp. Bd. of Trustees*, 11th Dist. Trumbull No. 2008-T-0042, 2008-Ohio-4976, in which the Eleventh District Court of Appeals was called upon to determine whether proceedings under R.C. 505.86 were subject to judicial review under R.C. 2506.01.

Case No. 7-20-09

As it existed when *Champion Mall Corp.* was decided, R.C. 505.86 enabled a board of township trustees to "provide for the removal, repair, or securance of buildings or other structures in the township that have been declared insecure, unsafe, or structurally defective by [a fire department, the county building department, or other authorized county agency], or buildings or other structures that have been declared unfit for human habitation by the board of health * * *." R.C. 505.86(B) (Dec. 20, 2005). In determining that public-nuisance declarations under R.C. 505.86 were not appealable under R.C. 2506.01, the Eleventh District concluded:

> Revised Code 505.86(B) does not constitute a quasi-judicial proceeding as contemplated by the Ohio Supreme Court, as there is no provision for hearing or the introduction of evidence. The determination that a structure is "insecure, unsafe, or structurally defective" is made by a fire department, the county building department, or other authorized county agency without any provision for hearing. The role of the Trustees is, in the exercise of its discretion, to provide for "the removal, repair, or securance" of such a structure. The Trustees are not required to receive evidence supporting the determination or otherwise review the validity of the determination that a structure is insecure, unsafe, or structurally defective.
>
> Before taking action, the Township Trustees must provide notice of the action to be taken and to provide an opportunity for the owner to remove, repair, or secure the structure on their own or to come to an agreement with the Trustees regarding the structure. The statute does not require or provide that the Trustees must allow the property owner to contest the determination that a structure is insecure, unsafe, or structurally defective.
>
> * * *

-15-

> Since R.C. 505.86 does not provide for or require a hearing and the opportunity for the introduction of evidence, no appeal by way of R.C. 2506.01 is available to Champion Mall Corporation.

(Citations omitted.) *Champion Mall Corp.* at ¶ 24-25, 27.

{¶20} The version of R.C. 505.86 at issue in *Champion Mall Corp.* is generally analogous to the version of R.C. 505.87 under which the Trustees issued the nuisance declaration. *Compare* R.C. 505.86 (Dec. 20, 2005) *with* R.C. 505.87 (June 18, 2010). Interestingly, R.C. 505.86 was amended after *Champion Mall Corp.* to specify that "each party in interest is entitled to a hearing if the party in interest requests a hearing in writing" and that "[a] party in interest who requested and participated in a hearing, and who is adversely affected by the order of the board, may appeal the order under [R.C. 2506.01]." R.C. 505.86(C)(1), (4). In contrast, R.C. 505.87 contains no such provisions. While the legislature amended R.C. 505.86 to afford the right to an administrative appeal pursuant to R.C. 2506.01, it did not amend R.C. 505.87 to include this same right. Thus, the holding in *Champion Mall Corp.* reinforces our conclusion that a nuisance-abatement action pursuant to R.C. 505.87 is not quasi-judicial in nature and there is no right to an administrative appeal.

{¶21} Finally, at least three other appellate districts, dealing with nuisance determinations like the nuisance declaration that the Trustees issued under R.C. 505.87, have concluded that such determinations did not result from quasi-judicial

proceedings. *State ex rel. Givens v. Shadyside*, 7th Dist. Belmont No. 20 BE 0001, 2020-Ohio-4826, ¶ 29 (concluding that appellant was not entitled to a writ of prohibition because initial nuisance determination under village ordinance "did not require a prior hearing, [and] thus the determination was not an exercise of quasi-judicial power"); *Nyland v. Olmsted Falls City Council*, 8th Dist. Cuyahoga No. 107845, 2019-Ohio-4257, ¶ 16-20 (holding that council's adoption of a resolution declaring a bridge located on a private road to be a nuisance did not arise from a quasi-judicial proceeding because "no applicable legislation required council to give notice, a hearing, or provide an opportunity to accept evidence when determining whether the bridge was a nuisance and required abatement"); *Englewood v. Turner*, 168 Ohio App.3d 41, 2006-Ohio-2667, ¶ 16-18 (2d Dist.) (concluding that city council resolution finding appellant's property to be a nuisance was not a quasi-judicial order because "[n]o notice was given that the resolution might issue, and * * * no procedure existed [in the city code] by which [appellant] could offer evidence concerning the matter"). Thus, in light of our own analysis of R.C. 505.87 and considering the cases examining similar nuisance-abatement laws, we conclude that the evidentiary-style proceedings that produced the Trustees' nuisance declaration were not quasi-judicial proceedings. As a result, the Trustees' nuisance declaration did not constitute a quasi-judicial determination.

{¶22} The fact that the Trustees held a purported evidentiary hearing on October 9, 2018, does not change the character of the Trustees' nuisance declaration. "[W]hether a proceeding is a quasi-judicial one from which an R.C. 2506.01 appeal may be taken depends upon what the law requires the agency to do, not what the agency actually does." *State ex. rel. Mun. Constr. Equip. Operators' Labor Council*, 141 Ohio St.3d 113, 2014-Ohio-4364, at ¶ 36. "An administrative agency's giving notice, conducting a hearing and allowing evidence to be presented does not create a right of appeal under R.C. 2506.01 where the proceedings are not quasi-judicial in nature requiring notice, hearing and the opportunity for introduction of evidence." *In re Appeal of Howard*, 73 Ohio App.3d 717, 719-720 (10th Dist.1991). Hence, where no statute or ordinance requires that an agency conduct a hearing resembling a judicial trial, "[t]he mere fact that the [agency] * * * conducted [a] hearing in a manner resembling a judicial trial does not mean that it exercised the quasi-judicial authority required to make the * * * order appealable under R.C. 2506.01." *State ex rel. Zeigler v. Zumbar*, 129 Ohio St.3d 240, 2011-Ohio-2939, ¶ 21. Thus, the "evidentiary hearing" conducted on October 9, 2018, did not and could not transform the Trustees' nuisance declaration into a quasi-judicial determination.

{¶23} Because proceedings under R.C. 505.87 are not quasi-judicial in nature, the Trustees' nuisance declaration was not a quasi-judicial determination.

As a result, the trial court lacked subject-matter jurisdiction over Grater's administrative appeal, and it therefore erred by reviewing the Trustees' nuisance declaration. *See State ex rel. Lanter*, 2020-Ohio-4973, at ¶ 16. Consequently, we vacate the trial court's judgment affirming the Trustees' nuisance declaration and remand for the trial court to enter an order dismissing Grater's administrative appeal for lack of subject-matter jurisdiction. *Id.*

{¶24} Additionally, Grater included a request for injunctive relief in his notice of administrative appeal, but that claim was effectively rendered moot by the trial court's decision affirming the Trustees' nuisance declaration. As we have vacated the trial court's decision affirming the Trustees' nuisance declaration, Grater's request for injunctive relief might have renewed viability.[4] However, courts have consistently concluded that requests for injunctive relief cannot be combined with an administrative appeal and must be filed in a separate action. *E.g.*, *Holm v. Clark Cty. Auditor*, 168 Ohio App.3d 119, 2006-Ohio-3748, ¶ 1, 3 (2d Dist.); *Summit Cty. Bd. of Health v. Pearson*, 9th Dist. Summit No. 22194, 2005-Ohio-2964, ¶ 7-9; *Pullin v. Hiram*, 11th Dist. Portage No. 2001-P-0146, 2003-Ohio-1973, ¶ 28. Furthermore, courts have suggested that this is true even if the trial court

---

[4] Although we offer no opinion on the availability of injunctive relief in this matter or on other legal recourse that may be available to the parties, we note that "[i]n the absence of a statutory provision for the constitutional minimum of judicial review of administrative action, review may be invoked by common-law methods, including a suit in equity for an injunction * * *." 56 Ohio Jurisprudence 3d, Injunctions, Section 31 (2021).

did not have subject-matter jurisdiction over the administrative appeal with which the request for injunctive relief was combined. *See Holm* at ¶ 3-7 (holding that the trial court correctly dismissed a request for injunctive relief combined with appellant's administrative appeal though the trial court did not have jurisdiction over the appeal); *see also Garrett v. Columbus Civ. Serv. Comm.*, 10th Dist. Franklin No. 10AP-77, 2010-Ohio-3895, ¶ 18-20, 23-24 (concluding that the trial court did not err by refusing to allow appellant to add a request for declaratory judgment to his administrative appeal despite the fact that the trial court lacked subject-matter jurisdiction over the appeal). Accordingly, on remand, the trial court is also instructed to dismiss Grater's request for injunctive relief. Consequently, we leave the parties in the same position they were in after the Trustees issued their October 29, 2018 resolution affirming their initial August 27, 2018 nuisance declaration.

## IV. Conclusion

**{¶25}** For the foregoing reasons, the judgment of the Henry County Court of Common Pleas is vacated. We remand this matter to the Henry County Court of Common Pleas for further proceedings consistent with this opinion.

*Judgment Vacated and*
*Cause Remanded*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**