[Cite as *State v. Nunnari*, 2022-Ohio-1003.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2021-P-0037** |
| Plaintiff-Appellant/<br>Cross-Appellee, | Criminal Appeal from the<br>Municipal Court, Ravenna Division |
| - v - | |
| DEVIN M. NUNNARI, | Trial Court No. 2020 TRC 02391 R |
| Defendant-Appellee/<br>Cross-Appellant. | |

# **O P I N I O N**

Decided: March 28, 2022
Judgment: Affirmed in part, reversed in part, and remanded

*Victor V. Vigluicci,* Portage County Prosecutor, *Theresa M. Scahill,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (for Plaintiff-Appellant/Cross-Appellee).

*Joseph C. Patituce,* Patituce & Associates, LLC., 16855 Foltz Industrial Parkway, Strongsville, OH 44149 (for Defendant-Appellee/Cross- Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant/Cross-Appellee, the State of Ohio, appeals from the April 5, 2021, judgment entry of the Portage County Municipal Court, Ravenna Division suppressing the breath alcohol results of Appellee/Cross-Appellant Devin Nunnari. Nunnari filed a cross-appeal, appealing the judgment entry of the court denying his motion to suppress the traffic stop. For the following reasons, we affirm the trial court's decision as to Nunnari's

cross-appeal and reverse and remand for further proceedings as outlined in this opinion as to the State's appeal.

## Procedural History

{¶2} On February 20, 2020, Ohio State Highway Patrol Trooper Chester Engle arrested Nunnari for Operating a vehicle under the influence (OVI) of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(d) and speeding in violation of R.C. 4511.21(C).

{¶3} Nunnari was arraigned in the Portage County Municipal Court on February 24, 2020. Nunnari filed a Motion to Suppress, a Supplemental Motion to Suppress, and a Motion for Judicial View. On March 10, 2021, the court held a suppression hearing. At the time of the hearing, the parties limited the scope of the hearing to the reasonable suspicion for Trooper Engle to conduct the traffic stop and initiate field sobriety tests as well as the admissibility of the breath test results.

{¶4} After the hearing, the court heard closing arguments from the parties and granted 14 days to Nunnari to file a post-hearing brief saying that the post-hearing brief was "going to have an impact on my ruling." The court said that it would give the State the same "courtesy as well, 14 days to respond." The court also granted Nunnari's Motion for Judicial View and agreed to view the scene both in daylight and after nightfall.

{¶5} Nunnari filed his post-hearing brief on April 6, 2021. Thirteen days later, the court issued its Judgment Entry denying Nunnari's motion as to the reasonable suspicion for the stop and to conduct field sobriety tests and granting his motion as to alcohol breath test. The next day, April 6, 2021, the State timely filed its post-hearing brief.

2

Case No. 2021-P-0037

**{¶6}** The State filed this appeal arguing that the trial court erred by issuing its Judgment Entry one day too early and that the trial court erred by excluding the results of the breath alcohol test. Nunnari filed a cross-appeal on the sole issue of whether Trooper Engle had reasonable suspicion to conduct the traffic stop.

### Suppression Hearing

**Traffic Stop:**

**{¶7}** Trooper Engle testified at the hearing that at 2:38 on the morning of February 20, 2020, he was stationary in a parking lot on State Route 59 near milepost 3. The area has retail establishments, restaurants, apartment complexes, and a gas station nearby. The area is well lit by streetlights and from auxiliary lights from nearby stores. State Route 59 goes uphill toward Horning Road. Engle testified that from his vantage point, he could see all the way to Horning Road where State Route 59 starts to curve and go back downhill.

**{¶8}** He said that traffic was light and that he was watching traffic to monitor for violations. Engle heard a vehicle's tires squeal and engine roar which drew his attention to a vehicle pulling out from an apartment complex between his position and Horning Road. He used his LiDAR to check the speed of the vehicle and measured it at 59 miles per hour in a 35 mile per hour zone. He observed the vehicle to be a dark four-door sedan.

**{¶9}** Engle pulled out of the parking lot to catch up to the vehicle but did not immediately turn on his lights or siren. As he pulled out of the lot, he saw the vehicle turn left onto Horning Road where he lost sight of it. He also saw a Kent Police Department cruiser pull out as well and travel in the same direction as the vehicle.

3

Case No. 2021-P-0037

{¶10} Engle traveled down Horning Road but was behind the Kent cruiser and did not see the suspected vehicle again until he saw it turn into an apartment complex. Engle stated that the Kent cruiser was directly behind the vehicle that turned into the complex. The Kent cruiser pulled into the apartment complex as well but never initiated a traffic stop.

{¶11} Engle was confident that the black sedan that pulled into the apartment complex was the same dark four-door sedan that he observed squeal its tires and speed down State Route 59. Trooper Engle's dash camera video shows that the time between his pulling out of the parking lot to the time that he initiated the traffic stop in the apartment complex parking lot was approximately 90 seconds.

{¶12} After stopping the vehicle, Engle identified the driver as Nunnari and questioned him about where he was coming from. Nunnari's answer was consistent with what the trooper observed. Engle noted that Nunnari had an odor of alcohol coming from his person and the odor remained after Nunnari stepped out of the vehicle. He also saw that Nunnari had bloodshot eyes. Nunnari admitted that he had last consumed alcohol at 1:00 a.m. and that he had two drinks. Engle decided to conduct field sobriety tests with Nunnari based on the high speed he observed him travel on State Route 59, the odor of alcohol coming from his person, the bloodshot eyes, and the admission to drinking.

**Breath Test Testimony:**

{¶13} The State called Jenna Walock, Program Administrator for the Ohio Department of Health, Alcohol and Drug Testing Program, to testify about the calibration of the breath test device used in this case. The State introduced exhibits B, C, D1, E, F, G, and H relating to the Nunnari's test and the calibration of the device. State's Exhibit B,

4

Nunnari's breath test result, was not certified. Moreover, Trooper Engle's testimony did not address Exhibit B, he did not testify that he conducted a breath alcohol test with Nunnari nor to the results of any such test. Walock testified about Exhibit B and said that it is a document maintained on the Department of Health, Alcohol and Drug Testing Program website. The remaining breath test exhibits were certified records kept and maintained in the regular course of business by the Department of Health. The State did not call Walock as an expert witness.

{¶14} Nunnari objected to the admission of these exhibits and to all testimony by Walock because she was not the individual who generated the exhibits or calibrated the machine Trooper Engle used to test Nunnari. That person, Craig Yanni, had recently retired from service and Walock instead testified in his absence as Yanni's former supervisor. The court allowed the testimony noting Nunnari's objection and indicated it would take the objections under advisement after considering the parties' post-hearing briefs.

**Trial Court's Judgment Entry:**

{¶15} The trial court issued its Judgment Entry on April 5, 2021, 13 days after Nunnari filed his post-hearing brief. In it, the court noted that it conducted a view of the scene and that during nighttime hours, it was difficult to track a vehicle through the intersection. The court therefore concurred with Nunnari's argument that it

> was practically impossible for Trooper Engle to maintain visual contact with the Defendant's alleged vehicle. However, this Court finds Trooper Engle's testimony credible and further finds even if visual contact was briefly lost, Trooper Engle's inferences from his pursuit and investigation, as well as the answers provided by the Defendant leads a reasonable person to conclude the Defendant's vehicle was properly identified by Trooper Engle as the vehicle and driver Trooper Engle observed speeding.

5

{¶16} In reference to Walock's testimony and the associated exhibits introduced through her testimony, the trial court found that the State did not meet it's "burden to permit testimony and exhibits introduced through Jenna Walock. The testimony and exhibits would require knowledge and/or opinions commonly not known to lay people. The State expressly chose not to qualify or call Jenna Walock as an expert witness."

**Law and Analysis:**

{¶17} "'Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a hearing on a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *Id.*; *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). A reviewing court must accept the facts determined by the trial court as true and "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside,* citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

**Nunnari's Cross-Appeal**

{¶18} In his cross-appeal, Nunnari raises one assignment of error:

{¶19} "The trial court erred in determining that probable cause existed to stop the vehicle driven by Appellant when the officer reported that it was late at night, and he did not actually see a violation and later lost sight of the vehicle."

{¶20} "A stop is constitutional if it is supported by either a reasonable suspicion or probable cause." *State v. McGary*, 11th Dist. Trumbull No. 2006-T-0127, 2007-Ohio-4766, ¶ 22, quoting *State v. Molek*, 11th Dist. Portage No. 2001-P-0147, 2002-Ohio-7159,

¶ 25. To justify an investigative stop, an officer "must be able to point to specific and articulable facts which would warrant a [person] of reasonable caution in the belief that the action taken was appropriate." *Id.*, citing *Molek*, at ¶ 25, citing *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (1991), citing *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The "police officer must be able to cite articulable facts that give rise to a reasonable suspicion that the individual is currently engaged in or is about to engage in criminal activity." *State v. James*, 11th Dist. Portage 2009-P-0082, 2010-Ohio-4556, 2010 WL 3733842, ¶16, quoting *State v. Gray*, 11th Dist. Geauga No. 99-G-2249, 2000 WL 973411, 2 (July 14, 2000), citing *Terry, supra,* at 6.

{¶21} Whether an officer had a reasonable suspicion to justify the investigative stop, the Supreme Court has held that the stop "must be viewed in light of the totality of the surrounding circumstances." *State v. McDonald*, 11th Dist. Trumbull No. 91-T-4640, 1993 WL 334223, *4, quoting *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), first paragraph of the syllabus. It is not possible to precisely define the reasonable suspicion necessary to initiate a stop and the standard cannot be "reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1999). Reasonable suspicion is less than probable cause but "something more than an 'inchoate and unparticularized suspicion or "hunch."'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry*, *supra*, at 27.

{¶22} Nunnari argues that the trial court's factual findings were not supported by competent, credible evidence and that we must reject them. Nunnari further argues that the trial court erred by considering the admissions Nunnari made after Trooper Engle

7

questioned him on the basis that these admissions occurred after the stop and do not support the Trooper's reasonable suspicion to initiate the stop.

{¶23} Although the trial court's judgment entry did indeed reference the answers Nunnari gave Trooper Engle as a partial basis for establishing reasonable suspicion for the stop, to the extent this is error, it is harmless. This is because Trooper Engle was able to cite articulable facts about the reason for initiating the stop that, when viewed in light of the totality of the circumstances, would warrant a person of caution that his action was appropriate. *See Molek*, 2002-Ohio-7159, at ¶ 25.

{¶24} Trooper Engle observed a vehicle travel at a high rate of speed and was able to measure the speed of the vehicle at 24 mile per hour above the speed limit. He observed the that the vehicle was dark in color and that it was a four-door sedan. The trial court conducted a judicial view of the scene and agreed with Nunnari that "it was practically impossible for Trooper Engle to maintain visual contact with the Defendant's alleged vehicle." However, the court did not find that Trooper Engle was unable to see the vehicle at all or would have been unable to measure its speed with his LiDAR. The court found that Trooper Engle's testimony was credible and that the inferences he made in his pursuit and investigation would lead a reasonable person to conclude that the vehicle was properly identified. Based on these factual findings, we find that Trooper Engle had reasonable suspicion to initiate the traffic stop.

{¶25} Therefore, Nunnari's assignment of error on his cross-appeal is without merit.

**The State's Appeal**

{¶26} The State raises two assignments of error in its appeal of the trial court's exclusion of the breath test results.

{¶27} "[1.] The trial court erred by sustaining Mr. Nunnari's objections to the testimony of Ms. Walock and the exhibits produced by the Ohio Department of Health prior to receiving and without considering the State's post-hearing brief."

{¶28} "[2.] The trial court erred by sustaining Mr. Nunnari's objections to the testimony of Ms. Walock and the exhibits produced by the Ohio Department of Health in the context of a suppression hearing."

{¶29} In its first assignment of error, the State contends that it was error for the trial court to issue its judgment entry prior to the expiration of time to respond. The trial court afforded 14 days to Nunnari to file a post-hearing brief and for the State, "14 days to respond."

{¶30} It is well established that a court has a "right to control its own docket" to ensure "the prompt and efficient dispatch of justice." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). However, if the court grants leave to file post-hearing briefs, "the court must be held to those terms."' *Cleveland Clinic Found. v. Commerce Group Benefits, Inc.*, 8th Dist. Cuyahoga No. 79907, 2002-Ohio 1414, 2002 WL 485764, *5. It is an abuse of discretion for a court to "simply collapse the time for responses, without notice, after previously setting down a specific response time[.]" *Mackey v. Steve Barry Ford, Inc.,* 8th Dist. Cuyahoga No. 58681, 1991 WL 95081, *2. A "trial court's order granting a motion to suppress must be reversed if the prosecution was not given an

9

adequate opportunity to present its case." *City of Cleveland v. Laylle*, 8th Dist. Cuyahoga No. 75196, 1999 WL 1068061, *1.

**{¶31}** In *Dayton v. Dabney*, the Second District Court of Appeals considered a lack of opportunity for a party to present evidence in a newly raised suppression issue and addressed the fundamental fairness of proceedings. The court said that it was error for the trial court to interject a new issue without giving the city the opportunity to present evidence on the issue. *Id.*

> On this latter point, we find appropriate the remarks of Dean Pound in his address to the American Bar Association on September 29, 1941:
> "'In a court, the judges from their very training are impelled to conform their actions to certain known standards and to conform to settled ideals of judicial conduct. **Professional habit and training lead them to hear both sides of every point scrupulously.** Rules of law which have entered into their everyday habits of action lead them to insist that **everything upon which they are to base an order or judgment must be before them in such a way that no party to be affected can be cut off from full opportunity to explain or refute it or challenge its application to his case.** * * *'" *Zangerle v. Evatt* (1942), 139 Ohio St. 563, 574–575, 23 O.O. 52, 56–57, 41 N.E.2d 369, 374.

*Dayton v. Dabney*, 99 Ohio App.3d 32, 39, 649 N.E.2d 1271 (2nd Dist.1994) (Bold added).

**{¶32}** In this case the suppression issue was not newly raised like in *Dabney*. However, the trial court afforded both parties an opportunity to respond to an issue raised during the hearing and afforded both parties an opportunity to file post-hearing briefs. Then, the trial court seemingly collapsed the time to respond without notice to the parties. This action implicates the same concerns raised in *Dabney* and *Mackey*.

**{¶33}** Although the court held a full hearing and the State was afforded an opportunity to present evidence, the trial court used its discretion to keep the record open

to give both parties the opportunity to present post-hearing briefs that the court said were "going to have an impact on my ruling." In contrast, the court closed the record at the hearing as it pertained to trooper's reasonable suspicion for the stop. The court did not request post-hearing briefs on that matter and the court did not cut a party off from the ability to explain or refute an issue. Therefore, it was appropriate for this court to directly address Nunnari's cross-appeal as the record before us on that issue is complete.

{¶34} However, this is not the case where the trial court granted the motion to suppress as to the admissibility of the Ohio Department of Health witness Jenna Walock and the associated exhibits introduced through her testimony. The trial court expressly left the record open for both parties to have an opportunity to file post-hearing briefs. The trial court granted 14 days to Nunnari and 14 days after the defendant's filing for the State to respond.

{¶35} The court denied the State of the rights which are afforded to any litigant, the right to have a full and fair hearing of its case. The trial court's factual findings are therefore uninformed and incomplete because it did not consider or address the information presented by the State in its timely filed post-hearing brief. Furthermore, the trial court's legal conclusions are also incomplete because it did not consider or address the State's legal arguments.

{¶36} This error undermines the ability of this court to serve its function as a reviewing court. "A reviewing court, even though it must conduct its own examination of the record, has a different focus than the trial court. If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court." *See Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 604 N.E.2d

11

138 (1992). The "trial court's function cannot be replaced by an 'independent' review of an appellate court." *Id.* Indeed, we cannot consider this error harmless as the trial court deprived one of the parties the opportunity to timely respond in a matter that the court itself acknowledged would be impactful to its ruling.

{¶37} Therefore, the State's first assignment of error has merit. As the resolution of the State's first assignment is dispositive of this appeal, we will not address the merits of the second assignment.

{¶38} The judgment of the Portage County Municipal Court, Ravenna Division is affirmed in part as to the trial court's judgment entry finding the Trooper Engle had reasonable suspicion to initiate the traffic stop and reversed in part as to the trial court's premature judgment entry ruling upon the admissibility of Walock's testimony and associated exhibits. This matter is remanded to the trial court for further proceedings consistent with this opinion.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

12

Case No. 2021-P-0037